In re Mark E. SODERLUND, Carol J. Soderlund, Debtors.

**WESTERN AND SOUTHERN LIFE IN-SURANCE COMPANY, Appellant,**

v.

Mark E. SODERLUND, Carol J. Soderlund, Appellees.

No. C–2–80–1080.

United States District Court, S. D. Ohio, E. D.

Aug. 25, 1981.

## OPINION AND ORDER

KINNEARY, District Judge.

This matter is before the Court on an appeal by appellant Western and Southern Life Insurance Company from an order entered by the bankruptcy court on October 22, 1980.

### A.

The facts relevant to this appeal, as set out in appellant's brief, are not in dispute.[1]

On June 9, 1976, the appellees, Mark E. Soderlund and Carol J. Soderlund, purchased a parcel of residential real property

---

1. Except for a minor dispute as to whether or not the appellees had "formal" notice of appellant's election to accelerate the note and to declare all of the indebtedness on the note to be due and payable prior to the filing by appellees of their joint petitions under Chapter 11, the parties are in agreement as to the facts. *See* Brief of Appellant, pp. 2–6 and Brief of Appellees, p. 2. In that the appellees do not contend that the possible inadequacy of the notice of the election to accelerate is a basis for affirming the order of the bankruptcy court, the Court need not address this issue.

at 451 Denwood Court, Gahanna, Ohio for use as their principal residence. They financed this purchase with a FHA insured mortgage loan in the amount of $34,750.00 from Yerke Mortgage Company and executed a mortgage note [note] for this amount which provided for interest at the rate of 8½ percent interest per annum. They also executed a first mortgage deed [mortgage] upon this property as security for the note. The note and mortgage were subsequently assigned by Yerke Mortgage Company to the appellant Western and Southern Life Insurance Company; the appellant is the present holder in due course of the note and the present mortgagee under the mortgage. The note included an acceleration clause.[2]

On July 1, 1979, the appellees failed to make their required monthly payment of principal, interest, and the tax and insurance escrow on the note and mortgage in the amount of $330.00. They have further failed to make any monthly payments since that time.

Due to the default in the payment of the note and mortgage, on February 25, 1980, at a time when the note and mortgage were eight months in default, the appellant instituted a foreclosure proceeding against the appellees in Case No. 80CV–02–955 in the Common Pleas Court of Franklin County, Ohio. At the time of the filing of that complaint, appellant elected to accelerate the note and to declare all of the indebtedness on the note to be immediately due and payable. At that time, the entire principal balance of the note in the amount of $33,-915.87 with accrued interest in the amount of $2,132.52 became due and payable with interest continuing to accrue on the principal balance at the rate of 8½ percent per annum.

Thereafter, on May 15, 1980, the appellees filed their joint petitions under Chapter 13 of Title 11 of the United States Code.

In conjunction with this filing, they filed certain schedules in which they listed their residence at 451 Denwood Court as an asset and appellant as a secured creditor based upon its note and mortgage. At this time, the appellees also filed their Chapter 13 Plan (Record on Appeal, Exhibit 1) which provided for the payment to the Trustee of $576 per month for 36 months from which the "current mortgage payments" of $330 per month would be made with the balance going to pay 100 percent of all secured claims, the arrearage on appellant's mortgage in the amount of $3,822.09, and 10 percent of the claims of all unsecured creditors.

On June 24, 1980, appellant filed its Proof of Claim, Rejection of and Objection to this Plan (Record on Appeal, Exhibit 2). The First Meeting of Creditors and Hearing on Confirmation with respect to this plan were held on June 24, 1980. When it appeared that this plan was not feasible, the appellees were given one week by the bankruptcy court within which to file an amended plan.

On July 1, 1980, the appellees filed their Amended Chapter 13 Plan (Record on Appeal, Exhibit 3). This amended plan was similar to the original plan except that the monthly payment by the appellees was increased to $728.93 to provide for payments to a second mortgage holder, the sum of $64.70 was to be earmarked from each monthly payment toward the arrearage owed appellant, and a projected income tax refund in the amount of $1,493.93 was to be paid to appellant so that the arrearage would be paid in 36 months.

Appellant again filed a Proof of Claim, Rejection of and Objection to this amended plan (Record on Appeal, Exhibit 4). Among the objections raised by appellant to this amended plan were (1) that the arrearage was not $3,822.09 as stated by appellees in

---

**2.** The acceleration clause provided:

If default be made in the payment of any installment under this note, and if such default is not made good prior to the due date of the next such installment, the entire principal sum and accrued interest shall at once become due and payable without notice at the option of the holder of this note. Failure to exercise this option shall not constitute a waiver of the right to exercise the same in the event of any subsequent default.

the amended plan but the entire sum of $37,837.62 then past due on the note and mortgage as a result of the acceleration of the note on February 25, 1980, and (2) that 36 months was not a "reasonable time" within which to pay the arrearage within the meaning of Section 1322(b)(5) of the Bankruptcy Code.

The First Meeting of Creditors and the Hearing upon Confirmation of this amended plan were held on July 2, 1980. On August 4, 1980, Bankruptcy Judge Sidman issued his Order on Objection to Confirmation (Record on Appeal, Exhibit 5). Judge Sidman denied confirmation of the plan on the ground that 36 months was not a reasonable time within which to cure a default on the first mortgage within the meaning of Section 1322(b)(5) of the Bankruptcy Code; in view of this finding, it was unnecessary to rule upon the other objections raised by appellant or to determine the amount of the arrearage.

On August 13, 1980, the appellees filed their Second Amended Chapter 13 Plan [hereinafter Plan] which is the subject of this appeal (Record on Appeal, Exhibit 6). The primary difference between this plan and the previous amended plan was that by rearranging the order of payment of certain other creditors the plan earmarked the sum of $125.40 each month toward the payment of the arrearage on appellant's note and mortgage, so that the arrearage would be paid within 18 months as opposed to 36 months.

Once again, appellant filed its Proof of Claim, Rejection of and Objection to this Second Amended Plan (Record on Appeal, Exhibit 7), raising basically the same objections as it had raised with respect to the amended plan. That is, appellant contended (1) that the arrearage was not $3,822.09 as stated by the appellees in the second amended plan but the entire sum of $38,-516.82 then past due on the note and mortgage as a result of the acceleration of the note on February 25, 1980, and (2) that 18 months was not a "reasonable time" within which to pay the arrearage within the meaning of Section 1322(b)(5) of the Bankruptcy Code.

A First Meeting of Creditors and a Hearing of Confirmation upon this Second Amended Plan was held on September 19, 1980. Appellant appeared at those hearings and orally argued its objections and expressed its position as set forth in its written objection.

On October 22, 1980, Bankruptcy Judge R. J. Sidman issued an Order on Objection to Confirmation (Record on Appeal, Exhibit 8) overruling the objections of appellant, and, on December 12, 1980, the Order Confirming Chapter 13 Plan was filed. With respect to appellant's first objection, Judge Sidman held that, notwithstanding the provisions of Section 1322(b)(2) and (b)(5) of the Bankruptcy Code, Section 1322(b)(3) was available to the appellees.[3] Specifically, Judge Sidman ruled that Section 1233(b)(3)

is not qualified in any respect and does not appear to be excluded in its applicability to a situation involving a defaulted first mortgage on residential real estate. In fact, it would appear that subsections (3) and (5) of § 1322(b) may be used serially to, first of all, provide for the curing of a prepetition default and secondly to provide for the maintenance of current payments during the life of the plan while arrearages are cured with-

---

**3.** Section 1322 of Title 11 provides, in part:
(b) Subject to subsections (a) and (c) of this section, the plan may—
.    .    .    .    .
(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or the holders of unsecured claims;
(3) provide for the curing or waiving of any default;

.    .    .    .    .
(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due;

.    .    .    .    .

in a reasonable time. Since both the provisions of § 1322(b)(3) and § 1322(b)(5) indicate that a plan may provide for the curing of any default, it is immaterial that a pre-petition acceleration clause may have been invoked by a creditor. The debtor has the choice, under the clear authority of § 1332(b)(3) of the Code, of providing in his plan for the curing of such pre-petition default and reinstating the terms of the mortgage.

Record on Appeal, Exhibit 8 at 2. With respect to appellant's second objection, Judge Sidman held that appellant failed to persuade the court that the 18 month period was unreasonable. Thereupon, Judge Sidman overruled the objection to confirmation filed by appellant and approved the second amended plan.

On November 3, 1980, appellant filed its notice of appeal.

### B.

The initial question before the Court is whether the Bankruptcy Court was correct in ruling that Section 1322(b)(3) was available to the appellees to cure their prepetition default on the note and mortgage held by appellant.

The appellant contends that Section 1332(b)(3) must be examined in the context of the other provisions of Section 1322 and that subsection (b) must be read in a manner that, if possible, gives effect to each paragraph. According to appellant, Section 1322(b)(3)

> is a much broader provision than 1322(b)(5) since it is not limited as to the type of creditor to which it applies and since it does not contain the reasonable time requirement. However, to the extent it allows for the curing of a default in a residential first mortgage by payment of the arrearage, paragraph (3) of Section 1332(b) is in direct conflict with paragraph (2) of that same section which provides that this cannot be done because it is a modification of the rights of that creditor. Moreover, unlike Section 1322(b)(5), Section 1322(b)(3) does not

contain the phrase "Notwithstanding paragraph (2)" or any similar language indicating that it is to be an exception to Section 1332(b)(2). Thus, it must be subject to the provisions and prohibition of paragraph (2) [,] or the prohibition of paragraph (2) protecting the rights of residential mortgagees from modification would be meaningless, since both the curing and the waiver of a default, as allowed by paragraph (3), are most emphatically modifications of the rights of a residential mortgagee. In addition, if paragraph (3) applies to every situation, including residential first mortgages, as the Bankruptcy Court holds, paragraph (5) would be unnecessary since paragraph (5) is much narrower than paragraph (3). Paragraphs (2), (3) and (5) of Section 1322(b) can only be read consistently by limiting the application of paragraph (3) of 1322(b) to those situations not prohibited by paragraph (2) and not allowed under paragraph (5)—i.e. secured and unsecured creditors, other than those secured only by a security interest on real property that is the debtor's principal residence, holding claims on which the last payment is due prior to the final payment under the plan. Section 1322(b)(3) has absolutely no application to the holder of a claim secured solely by a security interest in real property which is the debtors principal residence.

Brief of Appellant, p. 10.

The Court finds this reasoning persuasive and believes that it is consonant with the language of the statute and the views of commentators. *CCH Bankruptcy Reform Act of 1978* (1978) at ¶ 1323; Collier on Bankruptcy (15th ed.) at ¶ 1322.01(B). *See In re Brantley*, 6 B.R. 178, 6 BCD 932 (Bkrtcy.N.D.Fla.1980); *In re Baska*, 5 B.R. 184 (Bkrtcy.N.D.Ohio 1980). *But see In re Johnson*, 6 B.R. 34, 6 B.C.D. 579 (Bkrtcy.N. D.Ill.1980). In short, the Court concludes that Section 1322(b)(3) is not applicable to the residential mortgage held by appellant; the correctness of the Bankruptcy Court's

order must be evaluated in terms of paragraphs (2) and (5) of Section 1332(b).[4]

### C.

The appellees maintain that the order of the Bankruptcy Court can be affirmed on other grounds. They contend that their default on the appellant's note and mortgage can be cured under Section 1322(b)(5), despite the fact that the second amended plan does not provide for the payment of the total amount of indebtedness which, according to appellant, is now due because of appellant's election to accelerate the note.

A recent bankruptcy court decision from the Eastern District of New York notes that "[a] review of the applicable provisions of the Bankruptcy Code does not reveal a definitive answer to the question whether the acceleration of a mortgage debt precludes cure under Section 1322(b)(5)." *In the Matter of LaPaglia*, 8 B.R. 937, 940 (Bkrtcy.E.D.N.Y.1981). While it is clear "that Congress anticipated [that] Chapter 13 plans would provide for the curing of defaults on mortgages as well as for the maintenance of current payments thereon[,]" it is also clear that Section 1322(b)(5) is not available to cure "[d]efaults on debts which come due *before* the last payment under a Chapter 13 plan . . . ." *Id.* at 940–41 [emphasis in original].

■ The question of when the payment on appellant's note and mortgage was due can only be resolved by looking to the effect of the February 28, 1980 acceleration under Ohio law. *Id.* at 941. Under Ohio law, the appellant's election to accelerate the note and mortgage resulted in the payment on the note and mortgage becoming immediately due. *Nixon v. Buckeye Building & Loan Co., supra.* Consequently, Section 1322(b)(5) is also unavailable to cure

appellees' default in that the debt owed appellant was owing long before the last payment under the second amended plan would be due.

### D.

In summary, the Court determines that the Bankruptcy Court erred in confirming the seconded amended Chapter 13 plan of the appellees and in overruling the appellant's objection to confirmation. The Court HOLDS that Section 1322(b)(3) of the Bankruptcy Code does not apply to appellant, the holder of a secured claim secured only by a security interest in the real property that is the appellees' principal residence. The Court further HOLDS that Section 1322(b)(5) is unavailable in that the second amended plan fails to meet the requirements of that section because the payment on the appellant's note and mortgage was due before the date on which final payment would be due under the second amended plan.

Accordingly, the October 23, 1980 decision by the Bankruptcy Court is REVERSED. This action is REMANDED to the Bankruptcy Court for further proceedings consistent with this opinion and order.

IT IS SO ORDERED.

---

4. Even were the Court to decide that appellees could rely on Section 1322(b)(3) to cure their default, the second amended Chapter 13 plan approved by the Bankruptcy Court would not cure the default. Under Ohio law, the entire amount of indebtedness under a note and mortgage becomes due when the note is accelerated. *Nixon v. Buckeye Building & Loan Co.*, 18 Ohio L.Abs. 261 (Franklin Cty.Ct.App.1934); 37 O.Jur.2d *Mortgages* § 320. Here, the Bankruptcy Court approved a plan whereby the appellees would, over an 18 month period, pay the past due payments; the plan did not, however, provide for payment of the entire amount of indebtedness which, under Ohio law, was the amount presently owing.