**PERCY WILSON MORTGAGE AND FINANCE CORPORATION, Plaintiff,**

v.

**Tillie J. McCURDY, George W. Ledford, Trustee, Defendants.**

**In the Matter of Tillie J. McCURDY, Debtor.**

**CITIZENS FEDERAL SAVINGS AND LOAN ASSOCIATION OF DAYTON, Plaintiff,**

v.

**Anna M. MURRAY, George W. Ledford, Trustee, Defendants.**

**In the Matter of Anna M. MURRAY, Debtor.**

**Carl R. GROOMS, Plaintiff,**

v.

**Fonnie Louise KOMES f.n.a. Fonnie Louise Grooms, George W. Ledford, Trustee, Defendants.**

**In the Matter of Fonnie Louise KOMES, Debtor.**

**Adv. Nos. 3–82–0201, 3–82–0174 and 3–82–0115.
Bankruptcy Nos. 3–82–00638, 3–82–00538 and 3–82–0036.**

United States Bankruptcy Court, S. D. Ohio, W. D.

June 25, 1982.

Jeffrey V. Laurito, Dayton, Ohio, for plaintiff Percy Wilson Mortgage Corp.

Jeffrey P. Albert, Dayton, Ohio, for debtor/defendant Tillie J. McCurdy.

Clifton E. Plattenburg, Jr., Dayton, Ohio, for debtor/defendant Anna M. Murray.

John Curp, Dayton, Ohio, for plaintiff Citizens Federal Loan Corp.

Ronald H. Finkleman, Don Imhoff, Jr., Middletown, Ohio, for plaintiff Carl Grooms.

James F. Cannon, Dayton, Ohio, for debtor/defendant Fonnie L. Komes.

George W. Ledford, Englewood, Ohio, Trustee/defendant for Chapter 13.

*PERCY WILSON MORTGAGE AND FINANCE CORPORATION vs. MCCURDY:*
### FINDINGS OF FACT

—March 5, 1982—Original petition for relief under Chapter 13 filed.

—Proposed 3-year Plan provides that mortgage arrearages on residence, secured claims, and tax liens shall be paid

*pro rata.* Secured claims, except arrearages on real estate mortgage and tax liens, paid dividends on the value of the collateral plus interest at the contract rates, with lien retention, and the balance paid as unsecured claims *pro rata*, all at 100%.

The arrearage on the mortgage on residence real estate would be paid inside the Plan and the current installments outside the Plan. A foreclosure suit was pending in state court upon the filing, but the status of the action was not shown. The mortgage was scheduled as 15 payments in arrears at $135.00 per month.

—April 8, 1982—Complaint filed by Percy Wilson Mortgage and Finance Corporation objecting to confirmation and seeking relief from the automatic stay. The original mortgage, executed 31 August 1979, was in the amount of $12,600.00 with interest at 10% per annum. The Debtor is in default under the terms of the note for the installments due for October 1, 1980 and subsequent installments due until the Chapter 13 petition was filed, and now owes a total of $12,529.24 with interest.

—June 12, 1981 Plaintiff filed an action in foreclosure in the state court which is in judgment since January 8, 1982. The sheriff's appraisal on order of sale issued January 8, 1982, was $12,000.00. The sheriff's sale was scheduled for April 30, 1982. The Debtor lives on social security disability income of $573.90 and did not know her mortgage was in default because funds had been delivered to her son-in-law regularly for the payments, who did not remit.

## CITIZENS FEDERAL SAVINGS AND LOAN ASSOCIATION OF DAYTON vs. MURRAY:

—February 25, 1982—Original petition for relief under Chapter 13 filed. The 60-month proposed Plan provides for 100% payment on secured claims to the value of the secured claim, and the balance paid as an unsecured claim *pro rata* with the other unsecured claims at 35.24 per cent. Total secured claims were scheduled in the amount of $4,070.00 and unsecured in the amount of $2,780.74. The deficiency in the amount of $1,920.39 on the residence real estate mortgage is paid inside the Plan and current installments outside.

—March 24, 1982—Complaint filed by Citizens Federal Savings and Loan Association of Dayton, Ohio, objecting to confirmation and seeking relief from automatic stay. The Debtor derives her interest in the residence real estate by land contract from the original mortgagors executed without the consent of mortgagee, and in violation of the terms of the mortgage giving rise to an acceleration clause. The arrearages total is $1,920.39. The mortgage covered two other parcels of real estate, also sold on land contract; and, the mortgage deficiency is the result of deficiencies in land contract payments on land contracts on the other two parcels because the Debtor is current in her land contract payments to the mortgagors. Under the Plan, Plaintiff would be paid monthly payments of only $145.00, although the terms of the original mortgage note, including interest and tax escrow, require $385.00 per month.

The factual situation is complicated because the total balance on the mortgage to Citizens is $25,723.49, secured by three parcels of real estate, of which only one is subject to bankruptcy court jurisdiction. If the stay is not lifted, the practical effect would be to limit legal action to the collateral on two parcels. The Debtor's residence is valued at between $18,000.00 and $20,000.00.

## CARL R. GROOMS vs. FONNIE LOUISE KOMES:

—February 11, 1981—Original petition for relief under Chapter 13 filed.

—Proposed 3-year Plan provides that secured claims shall be paid *pro rata* value of the claims plus 12% interest as secured, with lien retention, and unse-

cured claims paid 10% *pro rata* subsequent to secured claims.

—As scheduled, secured claims were listed in the total amount of $11,402.00 and unsecured of $1,065.00. Two mortgages were listed on the residence real estate. A first mortgage with 2 months arrearages totaling $402.00 paid through the Plan and a second mortgage to Carl Grooms in the amount of $6,000.00, paid *pro rata* with secured creditors.

—March 3, 1982—Complaint filed by Carl R. Grooms seeking removal of the automatic stay "to permit Plaintiff to foreclose...." The note and mortgage involved is dated July 23, 1970 and was executed by Defendant (Debtor-Fonnie Louise Komes, formerly known as Fonnie Louise Grooms) in the amount of $5,000.00 plus interest at 6% per annum.

—The note and mortgage was in compliance with a decree of marriage dissolution between the parties; and, the note provides that the total principal and accrued interest would be due: "upon the earliest of the following events: (a) Maker's remarriage; (b) Maker's living with a man not related to her; (c) Whenever the Maker ceases to use the house as a principal residence for her and the children; (d) Maker's death; (e) By August 15, 1985."

—Plaintiff now seeks to accelerate the payment of the note, because of an undisclosed marriage by Defendant, and modification of the automatic stay to permit foreclosure.

These three cases exhibit three variables in fact patterns involving requests for relief from the automatic stay to permit secured creditors to proceed with foreclosure actions to sell the residence real estate of the Debtors.

### DECISION

#### I

The adversarial proceedings were combined to dispose of the issues in light of this Court's decision in *First Inv. Co. v. Custer, et al.,* 18 B.R. 842, 8 B.C.D. 1067 (Bkrtcy. 1982), and an apparent misunderstanding and misinterpretation of that decision. First, it should be emphasized that the rationale of *Custer* is not intended to be at variance with that of *In Re Soderlund,* 18 B.R. 12, B.L.D. ¶ 68,605 (D.C.1981), as to the law of acceleration of obligations as between a debtor-mortgagor and the mortgagee under Ohio law. The thrust of *Custer* is to recognize the effect of Ohio law as found in *Soderlund* in a Chapter 13 context, but to preserve and protect monetary values existing for the benefit of all of the parties interested in the debtors' estates, particularly other creditors, which is not presented in *Soderlund.* An accelerated mortgage remains a security interest, and nothing else, entitled to adequate protection.

■ The Chapter 13 jurisdiction recognizes the acceleration, as between the parties to the original mortgage contract, but protection may be provided by the court to all of the parties by confirming a proposed plan which effectuates the interest and purposes of the Congress, whether by statute or in equity, despite the contractual acceleration.

■ To this extent, each proposed plan must be scrutinized as to statutory requirements, especially its feasibility.

■ One important factor to consider is the amount and duration of pre-accelerated defaults in mortgage contract payments. Stated differently was the acceleration precipitated for the purpose of an artificial liquidation of a debtor's home? Or, is there a serious delinquency which cannot be feasibly cured during the term of a Chapter 13 administration?

■ Another factor is the extent and length of pre-acceleration efforts by the mortgagee seeking contract compliance. Were contract rights actively explored and mediated or acceleration delayed, to enable

debtor to cure delinquencies? Court jurisdiction cannot be invoked by a debtor for the obvious purpose of merely thwarting a necessary foreclosure and avoiding the inevitable.

As mentioned in *Custer* the likelihood of a judicial determination finding feasibility of a plan (11 U.S.C. § 1325(a)(6)) in light of a serious pre-Chapter 13 delinquency in payments on a real estate mortgage is very remote, in the absence of unscrupulous acceleration, contrived for ulterior motivation by a mortgagee which is flaunting the fact of the existence of adequate protection of the mortgage for what the parties originally intended—that is, as security for a loan.

In the same vein, the Court should not be an instrument for debtors seeking to use the legal process to effect only a delay of the inevitable rights of mortgagees. The bankruptcy court is not an asylum given to refugees enjoying diplomatic immunity from the law of the land. If the legal process is being exploited by debtors to no ultimate purpose of avoiding an unscrupulous and inordinate depletion of a debtor's estate to the detriment of all interested parties (other than a mortgagee adequately protected), the possibility of a judicial finding that the plan has been proposed in good faith is very doubtful. A mortgagee is entitled to the protection of statutory values.

In summary, *Custer* does not disagree with *Soderlund*, but merely finds additionally that contractual acceleration between the mortgagor and mortgagee does not deprive the bankruptcy court of all jurisdiction to consider other factors and interests of parties affected by the plan which have rights in the estate, as a balancing test. The equity jurisdiction and all-writs jurisdiction also may be exercisable for this purpose if the mortgagee is adequately protected by the valuation of the collateral, for which the bankruptcy court has primary jurisdiction. This equitable jurisdiction serves to bolster statutory language and authority as specifically granted to cure defaults by the broad express terms of 11 U.S.C. § 1322.

The facts in the three cases now *sub judice* should be thusly examined in the context of *Custer* and *Soderlund,* with specific norms to be applied, if the mortgage is an installment obligation, as follows:

(1) The first factor is the cause of the residence mortgage defaults. If the delinquencies were caused by an unanticipated, temporary emergency in a debtor's family (such as loss of employment, inordinate medical expense, casualty, etc.) which has already been alleviated so that likely economic resources are available to pay all delinquent, as well as current, installments, the feasibility of a plan in the best interests of creditors bears scrutiny, and foreclosure should be stayed.

(2) The next factor is the number and total amount of monthly mortgage installments which are presently in default.

(A) If the mortgage payments are more than six months in arrears, and a foreclosure action has already been instituted, most cases would then present a practically impossible burden to a debtor feasibly to provide "the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim" which is not less than the "allowed account" of the claim. 11 U.S.C. § 1325(a)(5)(B)(ii). In face of such a delinquency and the pending foreclosure, the state court suit should not be stayed unless at least one-half of the total delinquency can be paid by a debtor upon confirmation of the plan, and the present value of the claim paid in the plan (with current interest rates).

(B) If a mortgage is not more than six months in default, and a debtor's plan proposes to preserve economic values to the estate sufficient to make a distribution to other creditors by placing the residence on the market for private sale at the market value (to avoid a foreclosure sale at ⅔ value), the court

should exercise equity jurisdiction to stay foreclosure for 90 days for such a purpose.

(C) If a mortgagee has exercised forbearance in instituting a mortgage foreclosure, and a debtor is less than four months in default, a plan should provide a feasible cure of the default and the debt service charge increased to present value (current interest rates) before the court should further stay legal action to enforce the mortgage liability.

(3) If mortgage payments are not more than three months in default, the stay should be exercised to enable a debtor to propose a feasible plan under the original mortgage contract to cure all defaults and keep installment payments current, whether or not a mortgage foreclosure action has been instituted.

(4) If the state court foreclosure suit pending when bankruptcy court jurisdiction attaches is not in judgment, a debtor, directly or indirectly, should not be deprived of the statutory rights to seek removal of the foreclosure to the bankruptcy court and the equity jurisdiction, so long as values appear to exist to be preserved for the estate. See decision by this Court in *Hunter Savings Association v. Georgetown of Kettering, Ltd.* (Bkrtcy.1981) 14 B.R. 72.

## II

■ Adverting to the facts in the *Komes* case *instanter*, which does not involve an installment mortgage, it is not clear from the evidence whether or not the state court which rendered the dissolution of marriage decree has any retained jurisdiction. If so, such jurisdiction had not been invoked by the Plaintiff herein. The Plaintiff seeks now only to file a foreclosure suit. Conformably to the foregoing guidelines, such an action should be stayed only if the debtor modifies her plan to pay the allowed value of the claim at current market interest rates, and this interest then paid currently under the plan as it accrues. Otherwise, the jurisdiction of the bankruptcy court would serve only to defeat the rights of the former spouse to current value since the obligation secured is not an installment loan.

■ Adverting to the facts in the *McCurdy* case *instanter*, the Debtor is in default since October, 1980, and the foreclosure case has been in judgment since January 8, 1982. The state court suit should not be stayed further unless the total delinquency can be paid upon confirmation. The mortgagee is not adequately protected as to the value of the claim and the stay should be modified to permit foreclosure suit to proceed to sale conformably to the foregoing guidelines. The plan is neither in the best interest of creditors nor feasible and a further stay would only be an abuse of bankruptcy court jurisdiction to delay the inevitable.

■ Adverting to the *Murray* case *instanter*, relief from the stay should be granted unless Debtor proposes a feasible plan to pay the mortgage contract monthly installments of $385.00 per month, together with interest at the current market rates. As mentioned in the decision in *First Inv. Co. v. Custer, supra*, due-on-sale clauses are not invalidated in Ohio as restraints on alienation, although equitable principles may apply in light of the trend of recent case precedents. The Debtor is not privy to the mortgage contract, nevertheless, and to be adequately protected Plaintiff Citizens Federal Savings and Loan Association must receive the full value of the collateral. The automatic stay, therefore, should be lifted if a modified plan is not submitted in two weeks conformably to the foregoing guidelines feasibly to preserve economic values and adequately protect the Plaintiff mortgagee by curing the default and increasing the monthly payments to the mortgagee to the full installment amount plus interest at a current interest rate.