In re Alexander HUBBARD, Jr. and Christin Hubbard, Debtors.

In re Lark CRAWFORD, Debtor.

In re Kenneth J. COLONEL, and Mary Ellen Colonel, Debtors.

In re Gerald David GLENN and Janice Sue Glenn, Debtors.

Bankruptcy Nos. 1–81–02542, 1–81–03608, 1–82–00114 and 1–81–03565.

United States Bankruptcy Court, S. D. Ohio, W. D.

Oct. 12, 1982.

Robert A. Goering, Cincinnati, Ohio, for debtors in Nos. 1–81–02542 and 1–81–03565.

Stephen R. Buchenroth, Columbus, Ohio, for creditor Federal National Mgt. Assn.

Mark A. Kramer, Cincinnati, Ohio, for debtor in No. 1–81–03608.

Kirk Sampson, Cincinnati, Ohio, for creditor Kissell Co.

Susan Smith, Batavia, Ohio, and James D. Kenney, III, Louisville, Ky., for creditor Federal Land Bank of Louisville.

Robert H. Welch, Jr., Milford, Ohio, for debtor in No. 1–82–00114.

R. Daniel Hannon, Batavia, Ohio, for creditor New Richmond Nat. Bank.

James C. Henderson, Batavia, Ohio, Robert Sicuro, Asst. Atty. Gen., Columbus, Ohio, for Clermont Savings Ass'n.

## DECISION ON CREDITOR'S OBJECTION TO CONFIRMATION

BURTON PERLMAN, Bankruptcy Judge.

These are four Chapter 13 cases which are pending in this court. The plan in each case proposes to cure a default by providing for payment to a mortgagee of debtor's residential real estate. In each case the mortgagee has filed an objection to confirmation. Because the four cases present the identical question of law, we write a single decision for all of them.

In each of the four cases the mortgagee, after the mortgagor fell into arrears on his monthly mortgage payments, filed a complaint in foreclosure in the state court and secured a judgment of foreclosure prior to the time that a Chapter 13 case was filed in this court. Debtor in each case contends that the Bankruptcy Code allows him to cure the default, thereafter permitting him

to resume paying the mortgagee the regular monthly payments called for by the contract between mortgagor and mortgagee, and to pay out the arrearage in a "reasonable" period of time through the plan, in accordance with § 1322(b)(5). The objecting mortgagee in each case says that the benefits of § 1322(b)(5) are no longer available to the debtor involved, because the contract sought to be reinstated no longer exists, it having been merged into the now due judgment which was obtained. Mortgagee's reasoning is that § 1322(b)(5) cannot be applied because "the last payment" is no longer "due after the date on which the final payment under the plan is due." (We believe that this argument is in practical effect not different from an assertion that upon default, the usual provision in such agreements that the entire mortgage debt will be accelerated and then due, comes into play. We think it necessary to note this distinction because some cases deal with an acceleration context. In principle, whether the mortgagee is asserting that the entire mortgage debt is presently due and owing because he acted in conformity with an acceleration clause in an agreement, or whether it is entirely now due and owing because he obtained a judgment, seems to us immaterial for present purposes. Both results obtain from the application of state law. The question is whether the state law result may be undone.)

Much has been written on this subject and we do not intend unduly to extend the literature. It is clear that what is involved is the application of 11 U.S.C. § 1322(b)(2) and (5). The Bankruptcy Code there provides:

"(b) Subject to subsections (a) and (c) of this section, the plan may—

\* \* \* \* \* \*

(2) modify the rights of holders of secured claims other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims;

\* \* \* \* \* \*

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due; "

There is no dispute that § 1322(b)(2) relates to the situation at hand. It provides that the rights of a secured creditor whose collateral consists of residential real estate cannot be modified by a Chapter 13 plan. The precise question at hand is whether § 1322(b)(5) can be invoked to deaccelerate where under state law, there has been acceleration, or reinstate where there has been merger, of the original agreement between mortgagee and mortgagor of a residence.

We believe that the correct answer to this question is that provided in *In re Taddeo*, 685 F.2d 24 (2nd Cir., 1982). The court there held that the provision for curing of a default § 1322(b)(5) was intended to allow a mortgagor to deaccelerate the mortgage and reinstate the original payment schedule. We feel compelled to reach the same conclusion.

The theses upon which the *Taddeo* decision are based are irresistable. Thus, that court says that as used in the Bankruptcy Code:

"Curing a default commonly means taking care of the triggering event and returning to pre-default conditions. The consequences are thus nullified. This is the concept of 'cure' used throughout the Bankruptcy Code" (at 26)

The court documents such usage in the Code. Furthermore, and at the heart of the decision, is the statement by the court, that it does not read "curing defaults" under (b)(3) or "curing defaults and maintaining payments" under (b)(5) to be *modifications of claims,* (at 27), something which is proscribed by § 1322(b)(2). This careful distinction is well reasoned and entirely justified. In respect to the position to be found in some contrary decisions (see *Matter of*

*La Paglia,* 8 B.R. 937 (Bkrtcy.E.D.N.Y.,1981); *In re Williams,* 11 B.R. 504 (Bkrtcy.S.D.Tex.,1981)) that state law controls in respect to the effect of acceleration in accordance with the note and mortgage or of the securing of a judgment, the *Taddeo* court holds that state law holding that a default cannot be cured, "must fall before the Bankruptcy Code." (at 29).

The policy consideration adverted to in *Taddeo* (at 27) that a contrary conclusion would prompt races to the court house, is also compelling. That is, making § 1322(b)(2) and (5) available only to a debtor in default on a residence who succeeded in filing his Chapter 13 petition prior to acceleration would for all practical purposes eliminate the usefulness of those paragraphs as vehicles for the relief of such debtors. All that the mortgagee need do upon a default is routinely to invoke acceleration under the note in order to preclude any relief under Chapter 13 to a debtor. The mortgagee would then have total control over the terms under which reinstatement would be permitted, an outcome clearly inconsistent with the legislative intent to facilitate the rehabilitation of debtors through Chapter 13 of the Bankruptcy Code.

An ancillary question is here presented with which we must deal. A District Court in the Eastern Division of this District in *In re Soderlund* 18 B.R. 12 (S.D.Ohio,1981), an appeal from the decision of the Bankruptcy Court in that Division, reached a contrary conclusion to that indicated above. We must decide whether we are bound by principles of *stare decisis* to follow *Soderlund.* This question weighs especially heavily upon us in the context of these consumer bankruptcy cases, for ordinarily debtors in such cases cannot afford, and generally do not pursue, appeals from Bankruptcy Court decisions. The reason for this is simply that they cannot afford to do so.

Our review of the authorities leads us to conclude that we are not bound to follow a District Court decision in a different division of the same district as our own, and further that we are obliged to defer at least as much to the decision of a Court of Appeals of a different circuit as we are to a lower appellate tribunal in our own circuit. It is important to note that the Sixth Circuit Court of Appeals has not spoken on the issue with which we are here concerned.

It is generally accepted that while a District Court is bound by a decision of a Court of Appeals for its own Circuit, it is not bound by a decision of a Court of Appeals in another Circuit. 21 C.J.S. Courts § 198, 348. The inescapable conclusion from this statement is that a court is not free to ignore a controlling precedent of a court to which its own decision may be appealed. The reason for this must be that behind the doctrine of *stare decisis:*

> "The goal of the doctrine is a reasonable certainty in the application of known principles for achieving stability and predictability in the law, for convenience, and for uniform treatment of litigants" *Moore's Federal Practice* (2d ed.) vol. 1B, pp. 54–55.

An individual has a right to expect that if a point has been settled by an appellate tribunal to which a decision would be taken from the inferior court to which he would bring his controversy, that he may plan his affairs on the assumption that the law will be so applied in his controversy.

But where a point has been settled by an appellate tribunal outside the chain of appeal for his own trial court, an individual is not entitled to assume that the law has been settled as to him. This is generally understood to be how *stare decisis* is applied as between District Courts and Courts of Appeal in the federal system. The Southern District of Ohio is divided into Eastern and Western Divisions (28 U.S.C. § 115). Bankruptcy Judges sit in Columbus in the Eastern Division, and at Dayton and Cincinnati in the Western Division. Appeals from decisions of Bankruptcy Judges to District Courts stay within the respective divisions. It follows from the reasoning stated above that we are not compelled to follow an appellate decision in a different division of the District, because it is outside the chain of appeal of decisions from this court.

Finally, we note the following at 21 C.J.S. Courts § 198, 349:

"While a district court is not absolutely bound by decisions of the circuit court of appeals for another circuit, such decisions are highly persuasive and the court will follow them where its own circuit court of appeals has not decided the matter unless there are exceptional reasons for refusing."

This statement provided guidance in dealing with the question at hand.

Accordingly, in all four cases, the objection to confirmation on the ground that the default may not be cured is overruled.

In the *Lark Crawford* case, creditor objected to confirmation on the additional ground that the proposed plan does not liquidate the arrearage in a reasonable time. We agree. Creditor's objection will be sustained on this ground. Debtor shall have 20 days to file an amended plan, in the absence of which the case will be dismissed.