**In re BARKLEY 3A INVESTORS, LTD., Debtor.**

**Bankruptcy No. 94–21060–11.**

United States Bankruptcy Court, D. Kansas.

Dec. 22, 1994.

Cynthia F. Grimes and David C. Seitter of Levy & Craig, P.C., Overland Park, KS, for debtor.

Michael F. Flanagan of Polsineli, White, Vardeman & Shalton, Kansas City, MO, for PFL Life Ins. Co.

John E. Foulston, U.S. Trustee, Wichita, KS.

## MEMORANDUM OPINION

JOHN T. FLANNAGAN, Bankruptcy Judge.

Barkley 3A Investors, Ltd., filed a voluntary Chapter 11 petition [1] on June 13, 1994, and continues in possession of its office building property under 11 U.S.C. §§ 1107 and 1108.[2]

■ PFL Life Insurance Company ("PFL") holds debtor's $2.5 million note secured by a mortgage and assignment of rents on the building property which is valued between $1.7 million and $2 million.[3] On June 16, 1994, PFL moved for an accounting, to sequester rents, and to terminate debtor's use of the rents. Although claiming that it already held a perfected security interest [4] in rents, on the same date PFL also filed and served a separate notice to perfect its security interest under 11 U.S.C. § 546(b). Debtor formally objected to PFL's motion to terminate its use of the rents and moved for emergency hearing on July 13, 1994. The ultimate question is whether the postpetition rents are "cash collateral" under § 363, and

if so, the extent to which the debtor can use them.

To permit continued operation of the building pending this decision, the parties entered into an agreement in which PFL consented to the debtor's use of cash collateral under 11 U.S.C. § 363(c)(2)(A) and which provided PFL adequate protection under 11 U.S.C. § 363(c)(1). The Court approved the cash collateral agreement, denominated a Stipulation and Agreed Order, on July 21, 1994.

Under the agreement, debtor can use the rents in return for furnishing specific financial information; capping professional fees; maintaining insurance coverage; creating two real estate tax escrow funds; complying with an agreed upon budget; and paying PFL $5000 each month during the term of the agreement. Debtor agrees that PFL can apply the $5000 monthly payment to the debt in accordance with the loan documents. The agreement does not specify how the rents are to be applied to the debt under any future plan of reorganization.[5] PFL is free to pursue stay relief, dismissal of the case, and valuation of the collateral. The debtor has the right to challenge the validity of PFL's security interest at a later date agreeable to the parties.

The Court held a pretrial conference on July 20, 1994. Since the question was one of

---

1. PFL did not initiate a foreclosure (and therefore did not seek appointment of a receiver) before the debtor filed its petition in this case.

2. The debtor, Barkley 3A Investors, Ltd., appears by its attorneys, Cynthia F. Grimes and David C. Seitter of Levy & Craig, P.C., Overland Park, Kansas. PFL Life Insurance Company appears by its attorney, Michael F. Flanagan of Polsinelli, White, Vardeman & Shalton, Kansas City, Missouri.

3. In Kansas, an assignment of rents given with a mortgage is an assignment for security, not an absolute transfer. *Hall v. Goldsworthy*, 136 Kan. 247, 14 P.2d 659 (1932); *Mid Kansas Federal Savings and Loan Ass'n v. Zimmer*, 12 Kan. App.2d 735, 755 P.2d 1352 (1988); *see also In re Wiston XXIV Ltd. Partnership*, 147 B.R. 575 (D.Kan.1992), *appeal dismissed* 988 F.2d 1012 (10th Cir.1993); *In re Stone Ridge Associates, Ltd. Partnership*, 142 B.R. 967 (Bankr.D.Kan. 1992).

4. Under Bankruptcy Code § 101(50), "security agreement" means "agreement that creates or provides for a security interest." Under

§ 101(51), "security interest" means "lien created by an agreement." The Code therefore classifies a Kansas mortgage and rent assignment as a security agreement and the mortgage lien as a security interest. In this opinion, the mortgage lien will be referred to as a security interest, but this convention should not be taken to imply that personal property is in any way involved.

5. There is considerable difference of opinion about whether rents are included in the value of the collateral and how they are to be applied at the confirmation stage of the case. For examples, *see In re Club Associates*, 107 B.R. 385 (Bankr.N.D.Ga.1989); *In re Landing Associates, Ltd.*, 122 B.R. 288 (Bankr.W.D.Tex.1990); *In re Flagler-at-First Associates, Ltd.*, 114 B.R. 297 (Bankr.S.D.Fla.1990), which can be read to represent one approach while *In re Reddington/Sunarrow Ltd. Partnership*, 119 B.R. 809 (Bankr. D.N.M.1990); *In re Oaks Partners, Ltd.*, 135 B.R. 440 (Bankr.N.D.Ga.1991); and *In re Vienna Park Properties*, 976 F.2d 106 (2nd Cir.1992), can be read to represent another.

law requiring no evidence, the parties agreed that the pretrial order should contain an agreed statement of the relevant factual events. Upon submission of the pretrial order, the parties filed briefs, and the Court heard oral arguments on September 22, 1994.

PFL claims to hold a valid, perfected, enforceable first priority security interest in both the debtor's real estate and rents. It alleges the security interest is perfected prepetition in Kansas by the filing of various loan documents so that it extends to postpetition rents under 11 U.S.C. § 552(b). If the security interest is not already perfected, PFL claims to have perfected by timely filing a § 546(b) notice after the petition date. PFL says the debtor cannot avoid its security interest in the rents under 11 U.S.C. § 544 if it is perfected under one of these theories. If these positions fail, PFL relies on Kansas Statutes Annotated § 58–2343 to resolve the perfection issue in its favor. Finally, PFL wants an order that the postpetition rental income is cash collateral under § 363(a).

The debtor denies that the postpetition rental income is cash collateral. If it is cash collateral, the debtor claims that PFL is adequately protected or its security interest should be avoided by the equities of the case. Debtor reasons that the rents are not cash collateral because PFL failed to get a state court receiver appointed or to take equivalent action prior to the petition date. If this is correct, debtor claims it can avoid PFL's security interest in postpetition rents under § 544. Debtor further contests that PFL's notice under § 546(b) has the effect of perfecting the security interest in rents and that § 552(b) extends the interest to postpetition rents. In the alternative, debtor argues that PFL perfected its security interest by filing the § 546(b) notice and it would not apply to rents accumulated prior to that date. Finally, debtor claims that since the mortgage and the assignment of rents were recorded before the effective date of K.S.A. § 58–2343, the statute does not apply to this case to perfect the security interest in the rents.

The issues joined by these contentions are:

A. Whether under Kansas law a state court receiver must be appointed prior to the filing of a bankruptcy case in order for the postpetition rents to be cash collateral.

B. If not, whether the filing of a § 546(b) notice establishes an enforceable security interest in postpetition rents such that they become cash collateral.

C. Whether the recording of an assignment of rents in the appropriate office establishes a perfected security interest in rents which requires them to be treated as cash collateral in a subsequent bankruptcy proceeding.

D. Whether K.S.A. § 58–2343 operates retroactively upon this transaction, which was closed prior to the statute's enactment, to effect a perfected security interest in the postpetition rents.

E. Whether 11 U.S.C. § 552(b) extends PFL's security interest to the postpetition rents and, if so, what "equities of the case" must exist for a court to cut off such security interests in postpetition rents.

F. Whether the creditor's interest in the rents is adequately protected.

With the exception of the adequate protection issue, these questions depend primarily upon state law for their resolution. A number of published and unpublished court decisions in Kansas have pondered these state law issues. *See, e.g., In re Wiston XXIV Ltd. Partnership,* 141 B.R. 429 (Bankr.D.Kan. 1992) (Pusateri, J.); *In re American Freight System (AFS v. P.A. Bergner & Co.),* Case No. 88–41050, Adv. No. 90–7436 (Bankr. D.Kan. Sept. 27, 1991) (Pusateri, J.) (unpublished); *In re Villa West Associates, L.P.,* No. 88–40614–11 (Aug. 19, 1988) (Pusateri, J.) (unpublished); *In re Glessner,* 140 B.R. 556 (Bankr.D.Kan.1992); *In re Foxhill Place Associates,* 119 B.R. 708 (Bankr.W.D.Mo. 1990) (Missouri bankruptcy court interpreting Kansas law); *In re Stanley Stations,* 139 B.R. 990 (Bankr.D.Kan.1992); and *In re Stone Ridge Associates, Ltd. Partnership,* 142 B.R. 967 (Bankr.D.Kan.1992).

 The latest published decision is the district court opinion of *In re Wiston XXIV Ltd. Partnership,* 147 B.R. 575 (D.Kan.), *appeal dismissed* 988 F.2d 1012 (10th Cir.

1993).[6] In reversing the bankruptcy court, Judge Saffels held that a mortgagee has a perfected security interest in postpetition rents although it fails to obtain the appointment of a receiver before the filing of the bankruptcy case. The decision does not cite this Court's earlier opinion of *In re Stanley Stations*, 139 B.R. 990 (Bankr.D.Kan.1992), which gave considerable attention to the status of Kansas law while concluding that such an appointment or equivalent action is necessary for a Kansas mortgagee to have an enforceable lien against post-bankruptcy petition rents. However, a decision of a single district judge in a multi-judge district is not the law of the district and this Court is not bound to follow Judge Saffels' opinion.[7]

■ In the case at bar, however, it is unnecessary to follow *Wiston* or to revisit the state law questions. Instead, I can decide this case by assuming, without deciding the state law questions, that PFL holds a valid, perfected prepetition security interest in the rents.[8] The result of this assumption is that PFL's prepetition security interest in the debtor's rents extends under present § 552(b) to postpetition rents, giving them cash collateral status and restricting their use under § 363. The question then becomes whether PFL is entitled to adequate protection of its interest in the rents.

The Hon. James F. Queenan, Jr., has answered this question in *In re Mullen*, 172 B.R. 473 (Bankr.D.Mass.1994).[9] In *Mullen*, BayBank held notes, mortgages, and assignments of rent secured by four commercial properties owned by G. Burton Mullen. BayBank was entitled upon default to collect unpaid rents that were due and all rents thereafter accruing. Mullen defaulted and, before BayBank could foreclose or obtain appointment of a receiver, he filed under Chapter 11 on April 12, 1993. Mullen maintained the properties well and kept taxes and insurance current. There was no suggestion that either the property itself or the rental income streams were declining in value.

Debtor's notes totaled $3.5 million, and the fair market value of the several properties was $2.84 million. Because of these numbers and the confusion caused by some preference claims, the court found BayBank to be undersecured.

BayBank moved for adequate protection of its interest in the rents, seeking turnover or escrow of the "net rents." BayBank said that it had a present right to collect the rents and that it was being denied adequate protection by the stay preventing collection. Judge Queenan labeled this position a red herring designed to draw attention away from adequate protection principles. He stated that even if the bank had a present right to collect rents outside of bankruptcy, this did not mean that denial of the exercise of the right constituted denial of adequate protection. He saw that in collecting rents, a

---

**6.** With the passage of the Bankruptcy Reform Act of 1994, such enquiries into state law may decrease. Congress changed the Code by adding § 552(b)(2), a provision dealing with rents separately from other forms of collateral. Although § 552(b)(2) does not apply here because it was enacted on October 22, 1994, after this case was filed, the new subsection will probably change the focus of future litigation of the cash collateral status of rents. Under § 552(b)(2), a creditor holding a security agreement which by its terms extends to pre- and postpetition rents will have a security interest in postpetition rents that are cash collateral. The phrase "applicable non-bankruptcy law" does not appear in the new subsection, as it did in the prior section, so with the addition of § 552(b)(2), courts will not look to state law to decide whether a prepetition security interest extends to postpetition rental income.

**7.** *Threadgill v. Armstrong World Industries, Inc.*, 928 F.2d 1366, 1371 (3rd Cir.1991) (a bankruptcy judge is not bound to follow a decision of a single district judge of his district); *In re Gaylor*, 123 B.R. 236 (Bankr.E.D.Mich.1991); *In re Rheuben*, 128 B.R. 551 (Bankr.C.D.Calif.1991); *In re Hubbard*, 23 B.R. 671, 673 (Bankr.S.D.Ohio 1982); *In re Argo Communications Corp.*, 134 B.R. 776 (Bankr.S.D.N.Y.1991); *In re Davis*, 134 B.R. 34 (Bankr.W.D.Okla.1991); *In re Shattuc Cable Corp.*, 138 B.R. 557 (Bank.N.D.Ill.1992); *In re Shubert*, 147 B.R. 618 (Bankr.N.D.Ga. 1992); *In re Abernathy*, 150 B.R. 688 (Bankr. N.D.Ill.1993); *In re Johnson*, 140 B.R. 850 (E.D.Penn.1992); *Fox v. Acadia State Bank*, 937 F.2d 1566 (11th Cir.1991).

**8.** If counsel feel the need to have these issues decided later in the case, notwithstanding the ruling in this opinion, they may reassert them.

**9.** *Mullen* was decided before the Bankruptcy Reform Act of 1994 added § 552(b)(2) to § 552.

lender holding a rent assignment is realizing upon the collateral; therefore, it is foreclosing on a security interest under another name. A lender is not entitled to do this unless there is cause, including lack of adequate protection, to vacate the stay to allow foreclosure.

The question as put by Judge Queenan was "whether BayBank's adequate protection rights concerning rents should be considered separately or as part of the adequate protection of its security interest in the Debtor's entire property interests, including the stream of future rents." 172 B.R. at 474. BayBank's position, the judge said, incorrectly assumed that a mortgagee holding a rent assignment had adequate protection rights in the rents which are independent of its right to adequate protection of its security interest in the debtor's entire interest in the property, including the debtor's right to collect rents. This assumption ignored the difference between a security interest in a stream of rents and realization upon that security interest. The opinion pointed out that while adequate protection is not defined in the Code, § 361 furnishes examples of its meaning. Adequate protection under § 361 may be provided by " . . . (2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property." What must be given adequate protection, then, is the creditor's "interest in property." 11 U.S.C. § 361(2).

■ The court said that the value of the creditor's interest must be declining for adequate protection to be necessary. The undersecured creditor does not lack adequate protection merely by reason of being undersecured. *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.,* 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988).

In response to BayBank's claim that its rent assignment gave it a right to adequate protection independent of the adequate protection rights of its overall security interest under the mortgage and rental assignments, the court said:

BayBank says the value of its interest in the Debtor's property declines each time the Debtor consumes a month's rent in its operations. This is not so. Although BayBank loses its security interest in each month's rents as the rents are consumed, BayBank retains its security interest in all future rents. The value of that stream of future rents is not declining. The lien on each month's rents replaces the lien on the prior month's rents, so there is a replacement lien of equal value, within the meaning of section 361.

What BayBank actually wants to do is to now realize upon its security interest in rents. In *United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.,* the Supreme Court held a secured creditor's "interest in property" does not include the right to immediate possession of collateral or its proceeds at foreclosure. By the same token, "interest in property" does not include the right to immediate possession of rents.

*In re Mullen,* 172 B.R. 473, 476–77 (Bankr. D.Mass.1994) (footnote omitted).

The judge then mentions cases in which the rents are used to maintain the property, a situation not generally held to be a denial of adequate protection. In this context, Judge Queenan identifies as most helpful those cases concerning the proper application of consensual payments made to the mortgage holder during the case, when the property is not declining in value, citing as an example *In re IPC Atlantic Limited Partnership,* 142 B.R. 547 (Bankr.N.D.Ga.1992). In *IPC,* the debtor made eight voluntary payments during the case, even though the value of the property was not declining. The debtor's plan then proposed to apply the payments to the first eight mortgage payments due after confirmation. The creditor claimed that it had a separate category of collateral in the rents and that the voluntary payments offset the rents used to maintain the property and should not reduce the debt at all. The court in IPC applied the payments against the·debt because it viewed the security interest as a whole, treating it as one security interest obtained on the mortgage and the rents. Because the value of the

overall interest was not declining, the court in IPC held there was no lack of adequate protection, citing *Timbers*. Not applying the payments against the debt would allow the creditor to receive more than the amount of its secured claim.

Judge Queenan compares rents to receivables or inventory as handled in financing agreements. So long as the value of the stream of future accounts or inventory and their proceeds is not declining, an undersecured receivables or inventory lender is not denied adequate protection by having its lien extended to postpetition accounts and inventory. The newly generated receivables are subjected to a lien by agreement so the present proceeds can be used and there is no lack of adequate protection. The new proceeds are used to generate new collateral and new proceeds, and the lender cannot complain about the consumption of any particular proceeds. The same is true with rents. The next month's rents are automatically subject to the lien under § 552(b). Rents and receivables constantly renew themselves. So long as the debtor is not operating at a loss, or rents are not declining, the renewals provide constant value.

Another reason given for this gestalt view of a security interest is that the value of the accruing rents is an integral part of the value of the real estate itself. Appraisers arrive at their values by determining what sum represents the property's annual net income potential, and then capitalizing that amount by multiplying it by a rate which represents a reasonable percentage return on investment. As a variation, they also use a discounted cash flow analysis. Under either approach, the rental income is determinative. It is thus impossible to arrive at a value of BayBank's interest in rents which is independent of the value of its mortgage interest in the property. 172 B.R. at 478.

As a second holding in *Mullen* supporting denial of turnover or escrow of net rents, Judge Queenan found that it would be inequitable for BayBank to have a security interest in each month's rents rather than have them used by the debtor and replaced by BayBank's security interest in rents of the following month. The court reviewed the legislative history covering the last sentence of § 552(b) and concluded that by that language, Congress had in mind protecting against secured creditors improving their positions. Congress was said to be concerned about the situation where the estate spends money and thereby causes an enhancement in proceeds or rents which improves the position of the secured party. The court said:

> BayBank's continuing security interest in a stream of post-petition rents does not improve its position. This is the same security interest in rents it had before the petition filing date. The value of that rental stream may be increasing through additional tenancies brought on by the Debtor's ongoing management. But there is nothing inequitable about that. The parties presumably intended the value of BayBank's security interest to be dependent, at least in part, on the Debtor's management skills.

> BayBank's position would dramatically change, however, should I grant its request for a turnover or escrow of net monthly rents. Because BayBank is undersecured and thus not entitled to interest, BayBank would be required to apply any net rents so received to principal [citing *Oaks Partners, Ltd.*, 135 B.R. 440 (Bankr.N.D.Ga.1991)]. During each month, therefore, BayBank would substantially improve its position. Its debt would decline, yet its security value would remain constant. This would be at the expense of the estate, which would still be harnessed with operating the properties. BayBank's security interest in rents would be thereby changed from one that fills and empties each month to one that increases, indeed is realized upon, incrementally. Extension of BayBank's post-filing security interest in that fashion would be inequitable. The inequity is present even though the estate's expenses for each month are deducted before the monthly turnover or escrow. Reserves for replacement are often necessary. Even with the deduction of any such reserves, however, the paramount inequity would remain. BayBank would be enjoying the fruits of the Debtor's labor while BayBank in effect conducts a gradual fore-

closure at a time when its security value remains constant.

172 B.R. at 479 (footnotes omitted).

Thus, Judge Queenan answered his original question by holding that the mortgagee's unitary security interest in the real property and the rents was adequately protected by a replacement lien in future rents, and alternatively, that the turnover or escrow would have brought about an increase in the value of BayBank's security interest that was inconsistent with the "equities of the case" within the meaning of § 552(b) of the Code.

As Judge Saffels noted in *Wiston*,[10] "Under Kansas law, an assignment of rents to secure payment of a mortgage debt is deemed part of the mortgage, and is enforceable only in accordance with the law relating to foreclosure of mortgages."[11] *See also In re Stanley Stations*, 139 B.R. 990 (Bankr. D.Kan.1992), which notes that in Kansas, mortgage rents issues are controlled by real estate law, not the Uniform Commercial Code.[12]

■ It follows that a Kansas mortgage containing a rents assignment clause or a rents assignment taken with a mortgage as security is consistent with the unitary security interest view unveiled in *Mullen*.

In this case, as in *Mullen*, the lender makes no contention that the value of the real property or the rental stream is declining nor has the Court seen any indication in counsel's statements or the pleadings to this effect.

Assuming, without deciding the state law issues, that PFL's security interest is valid and perfected, it attaches automatically to future rents by force of § 552(b). Consequently, PFL's security interest in the real property and rents is adequately protected by its extension to future rents and a contrary result would be improper under the equities of the case. PFL's motion to terminate debtor's use of the postpetition rents is denied.

The Court finds that this proceeding is core under 28 § U.S.C. 157 and that the Court has jurisdiction under 28 U.S.C. § 1334 and the general reference order of the District Court effective July 10, 1984 (D.Kan.Rule 705).

The foregoing discussion shall constitute findings of fact and conclusions of law under Fed.R.Bankr.P. 7052 and Fed.R.Civ.P. 52(a).

IT IS SO ORDERED.

---

**10.** *In re Wiston XXIV Ltd. Partnership,* 147 B.R. 575, 579 (D.Kan.1992).

**11.** Citing *"Hall v. Goldsworthy,* 14 P.2d at 661; cf. *First Federal Savings and Loan Ass'n v. Moulds,* 202 Kan. 557, 451 P.2d 215, 219 (1969) (right to possession and to rents and profits of property being foreclosed is in defendant owner and except for waste, is absolute); *Capitol Building and Loan Ass'n v. Ross,* 134 Kan. 441, 7 P.2d 86, 87 (1932) (mortgagor's right to possession of property during redemption period includes right to rents and profits, which cannot be waived by any provision of the mortgage); and *Mid Kansas Federal Savings and Loan Ass'n v. Zimmer,* 12 Kan.App.2d 735, 755 P.2d 1352, 1355 (1988) (separate assignment of rents, executed at same time as note and mortgage, is subject to statute prohibiting waiver of redemption in any mortgage instrument)."

**12.** "Bankruptcy courts applying other states' adopted versions of the Uniform Commercial Code generally agree that rent assignment clauses in real estate mortgages do not create liens against personal property subject to the Uniform Commercial Code's security interest rules. *First Federal Savings v. City National Bank,* 87 B.R. 565 (W.D.Ark.1988). *In re Porter,* 90 B.R. 399 (N.D.Iowa 1988). The Kansas version of the U.C.C appearing at K.S.A. 84–9–104 likewise expressly does not apply '(j) ... to the creation or transfer of an interest in or lien on real estate, including a lease or rents thereunder.' Thus, the Court will look to Kansas real estate mortgage law for the nature and extent of MBL's right to possession of the rents here at issue." 139 B.R. at 993.