**In re STANLEY STATION ASSOCIATES, L.P., Debtor.**

**Bankruptcy No. 90–40324.**

United States Bankruptcy Court, D. Kansas.

April 24, 1992.

Cynthia F. Grimes and Daniel D. Phillips, Lewis, Rice & Fingersh, Kansas City, Mo., for debtor.

Stephen B. Sutton and Stephen A. Murphy, Gage and Tucker, Kansas City, Mo., for Mut. Benefit Life Ins. Co.

James E. Foulston, Wichita, Kan., trustee.

## MEMORANDUM OF DECISION

JOHN T. FLANNAGAN, Bankruptcy Judge.

Two contested matters raise the same principal issue for decision. Debtor-in-possession, Stanley Station Associates, L.P. ("Stanley" or "debtor"), moves for turnover of rents generated by a shopping center it owns. Mutual Benefit Life Insurance Company ("MBL") moves for adequate protection of its alleged lien against the rents. MBL holds some of the rents through its agent Kessinger/Hunter & Co. ("K/H") by authority of a Johnson County, Kansas, District Court rent impoundment order that MBL obtained before the debtor filed this voluntary Chapter 11 case. The Court has denied MBL's earlier motion for relief from stay which sought leave to apply the rents to its claim.

Stanley Station Associates, L.P., appears by its attorneys, Cynthia F. Grimes and Daniel D. Phillips of Lewis, Rice & Fingersh, Kansas City, Missouri. Mutual Benefit Life Insurance Company appears by its attorneys, Stephen B. Sutton and Stephen A. Murphy of Gage & Tucker, Kansas City, Missouri.

## JURISDICTION

The Court has jurisdiction under 28 U.S.C. § 1334 and the general reference order of the District Court effective July 10, 1984. This proceeding is core under 28 U.S.C. § 157.

## ISSUE

The general question is whether a Kansas mortgagee is entitled to "cash collateral" treatment of the rents generated by mortgaged property when it obtained an ex parte state court order for possession of those rents before the mortgagor filed its Chapter 11 reorganization petition. The Court answers in the negative.

## BACKGROUND

The facts as gleaned from the motions and affidavits are stipulated and undisputed. Stanley Station Associates, L.P., is a Kansas limited partnership with its principal place of business in Stanley, Kansas. Stanley filed for relief under Chapter 11 of the Bankruptcy Code on February 16, 1990. Its principal asset is a shopping center located in Stanley, Kansas. The Court has previously appraised the shopping center at a fair market value of $1,800,000.00 as of February 16, 1990.

A Mortgage, Security Agreement and Assignment of Rents and Leases, all dated December 19, 1985, encumber the shopping center and its accoutrements (except for a pad site). Debtor executed these documents in favor of MBL, which caused them to be recorded with the Johnson County, Kansas, Register of Deeds on December 19, 1985. The instruments assign

to MBL all rents and profits from the shopping center.

The Mortgage accompanies a Promissory Note dated December 19, 1985, in the principal amount of $2,250,000.00, payable to MBL in 60 monthly installments of $19,-218.75 with the entire balance due on January 1, 1991. Debtor has made no installment payment due under the Promissory Note and Mortgage since August of 1989 and is in default. On the petition date, February 16, 1990, the debtor owed MBL $2,412,450.81 on the Note.

The loan documents contain various provisions relating to MBL's remedies against rents upon default, typical of which is the provision giving MBL the right to "all ... rents, issue and profits less operation and maintenance expenses, derived from the security." The same clause purports to gives MBL the right to a receiver upon default. [See paragraph 2 of Mortgage and Security Agreement dated September 19, 1985, attached to the MBL Proof of Claim filed July 27, 1990.]

The significant state court filing events all took place on February 1, 1990. At 1:14 p.m. on that date, MBL filed a "Petition for Mortgage Foreclosure" in the District Court of Johnson County, Kansas. The Petition named Stanley and 32 tenants of the shopping center as party defendants. It prayed for (1) judgment for foreclosure against Stanley; (2) an order directing the tenants and others in possession to make all present and future rent payments to plaintiff MBL or its designated depository; (3) an order declaring its mortgage a first lien on the property; (4) sale of the property; (5) application of the sale proceeds to MBL's claim, after payment of costs and taxes; (6) an order foreclosing all defendants from any right, title or interest in the property; and (7) an order for a writ of assistance to put plaintiff MBL in possession of the property.

The foreclosure petition did not pray for the appointment of a receiver, nor did it state the probable value of the property or the estimated annual income therefrom as is required in a petition or application for appointment of a receiver under K.S.A. 60–

1304. No provision for a receiver's bond was addressed. The petition was not verified. The record does not contain an application for appointment of a receiver, but as will be discussed later, a hearing for appointment of a receiver was scheduled.

At 2:03 p.m. that same day, MBL filed a "Motion for Order to Pay Rents Pursuant to Assignment of Rents and Leases." MBL supported this pleading with a "Memorandum in Support of Motion for Order to Pay Rents Pursuant to Assignment of Rents and Leases." These pleadings urged the court to order the tenants to make their rental payments to plaintiff or its designee.

At the same time, 2:03 p.m., MBL filed an "Order to Pay Rents Pursuant to Assignment of Rents and Leases." This order was signed by The Honorable Marion W. Chipman, Judge of the District Court of Johnson County, Kansas. The order was obtained without prior notice to the debtor. Judging from the simultaneous filing times of the pleadings, MBL obtained the judge's signature on the order before it filed the motion. The record does not reflect that Judge Chipman heard evidence or made findings before signing the order which reads:

> ORDERED, ADJUDGED AND DECREED that, until further order of the Court, all defendant tenants and lessees shall make all rent payments directly to The Mutual Benefit Life Insurance Company and mailed to Kessinger/Hunter & Co., Inc. at 15377 West 95th Street, Lenexa, Kansas 66219, c/o Mr. Kenneth M. Nicolay.

Two minutes later, at 2:05 p.m., MBL filed a "Motion to Appoint Special Process Server" and an "Order for Appointment of Special Process Server" signed by Judge Chipman. The order directed "that Michelle D. Campbell, or other qualified personnel of Gage & Tucker, be appointed as special process server to serve the defendants in the State of Kansas." Although the record does not show that MBL filed a pleading asking for the appointment of a receiver, the state court then scheduled a

hearing for appointment of a receiver for February 16, 1990, at 4:30 p.m.[1]

Before the hearing for appointment of a receiver on February 16, 1990, debtor filed its voluntary petition for Chapter 11 relief, triggering the automatic stay against further proceedings in state court. In the interim between the foreclosure filing on February 1, 1990, and the Chapter 11 filing on February 16, 1990, a number of the tenants heeded the state court order and paid their rent to MBL's agent, K/H, rather than to the debtor.

On March 22, 1990, debtor moved in this Court for an order of turnover under 11 U.S.C. § 543 seeking to compel Kessinger/Hunter as an agent of MBL to turn over collected rents.

MBL and K/H objected to debtor's Motion for Turnover, and MBL then filed a Motion for Relief from Stay. On June 8, 1990, MBL filed a notice of perfection of rents under 11 U.S.C. § 546(b).

At the hearing on November 19, 1990, this Court denied MBL's Motion for Relief from Stay.

At no time in this proceeding has MBL moved to prohibit debtor from using rents as cash collateral. Kessinger/Hunter has continued to collect rents from some, but not all, tenants, while other tenants have continued to pay the debtor. Debtor has also received Court authority to employ a rents collection attorney pending resolution of these issues. The rents collected by this attorney are being held in an account by debtor's counsel.

## CONTENTIONS OF PARTIES

MBL contends that the February 1, 1990, ex parte order of the District Court of Johnson County, Kansas, ordering the rents paid to its agent K/H, is a valid order which has the effect of "perfecting" its lien on the rents, thereby making them "cash collateral" under §§ 363(a) and 552(b) of the Bankruptcy Code. In the alternative, MBL contends its motion under § 546(b) dictates the same result. Finally, MBL

claims not to be adequately protected in the rents and entitled to relief from the § 362 stay so that it may apply the rents to its claim.

Debtor contends that the state court ex parte order to pay rents to MBL's agent violates due process of law and is therefore void. In debtor's view, neither the pre-petition rent impoundment order nor the post-petition sequestration motion under § 546(b) have perfected a lien against the rents which would entitle MBL to cash collateral treatment of the rents under the Bankruptcy Code.

## DISCUSSION

### I

■ Unless some federal interest requires a different result, property interests created and defined by state law are controlling in bankruptcy. *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); *In re Matter of Jeffers*, 3 B.R. 49 (Bankr.N.D.Ind.1980); *In re Jenkins*, 13 B.R. 721 (Bankr.D.Colo.1981), rev'd on other grounds, 19 B.R. 105 (1982); *In re Oak Glen R–Vee*, 8 B.R. 213 (Bankr.C.D.Calif.1981); *In re Gaslight Village, Inc.*, 6 B.R. 871 (Bankr.D.Conn.1980); *In re Hellenschmidt*, 5 B.R. 758 (Bankr. D.Colo.1980); *In re Kuhn Construction Co., Inc.*, 11 B.R. 746 (Bankr.S.D.W.Va. 1981).

■ Bankruptcy courts applying other states' adopted versions of the Uniform Commercial Code generally agree that rent assignment clauses in real estate mortgages do not create liens against personal property subject to the Uniform Commercial Code's security interest rules. *First Federal Savings v. City National Bank*, 87 B.R. 565 (W.D.Ark.1988). *In re Porter*, 90 B.R. 399 (N.D.Iowa 1988). The Kansas version of the U.C.C. appearing at K.S.A. 84–9–104 likewise expressly does not apply "(j) ... to the creation or transfer of an interest in or lien on real estate, including a lease or rents thereunder." Thus, the Court will look to Kansas real estate mort-

---

**1.** Although not shown in the record, presumably MBL filed a motion for appointment of a receiv-er at the same time in order to prompt the court to set the hearing.

gage law for the nature and extent of MBL's right to possession of the rents here at issue.

## II

A Kansas mortgagor can waive redemption rights "except in a mortgage instrument against a dwelling or dwellings for occupancy by not more than two families or against agricultural land." K.S.A. 60–2414. The commercial property in this case does not fall within this statute, and the debtor has waived its redemption rights under Kansas law in Article 6.5 of the mortgage.

Therefore, we focus on the mortgagee's right to rents during the period after the filing of the foreclosure petition and before the sale of the property, not during the redemption period after the sale when the right to possession of the rents enhances the mortgagor's ability to redeem the property. See *Capitol B. & L. Ass'n v. Ross,* 134 Kan. 441, 7 P.2d 86 (1932), for an example of the latter situation.

One of the earliest reported Kansas cases discussing the nature of the rights and duties of mortgagees and mortgagors in real property is *Chick et al. v. Willetts,* 2 Kan. 379 (1864). The opinion distinguishes a Kansas mortgage from a common law mortgage in the process of deciding which statute of limitations was applicable to a cause of action. At page 386, the court gives this lesson on the nature of a Kansas mortgage:

> The statute gives the mortgagor the right to possession, even after the money is due, and confines the remedy of the mortgagee to an ordinary action and sale of the mortgaged premises; thus negativing any idea of title in the mortgagee. It is a mere security, although in the form of a conditional conveyance; creating a lien upon the property, but vesting no estate whatever, either before or after condition broken. It gives no right of possession, and does not limit the mortgagor's right to control it—except that the security shall not be impaired. He may sell it, and the title would pass by

his conveyance—subject, of course, to the lien of the mortgage....

The statute referred to in *Chick* is a territorial law enacted February 1, 1859, effective June 1, 1859. It was one of the territorial laws incorporated into state law by the Constitution of the State of Kansas, Schedule § 4, adopted at Wyandotte, July 29, 1859. The statute appears at Sec. 12, on page 355 of the Compiled Laws of 1862 as follows:

> In the absence of stipulations to the contrary, the mortgagor of real estate may retain the right of possession thereof; *but, in case of personal property, the mortgagee shall hold legal title and the right of possession.* (Emphasis added.)

In 1868, the Kansas legislature amended the statute by changing the word "estate" to "property," by deleting the last clause relating to the mortgagee's title and right to possession of personal property, and by deleting the words "the right of." Since then, the act has survived without change and is now found at K.S.A. 58–2301 in this form:

> K.S.A. 58–2301. *Lien jurisdiction; possession in mortgagor.* In the absence of stipulations to the contrary, the mortgagor of real property may retain the possession thereof. G.S. 1868, ch. 68, Sec. 1; Oct. 31; R.S.1923, 67–301.

■ This statute marks Kansas as a lien theory mortgage state. *Chick et al. v. Willetts,* 2 Kan. 379 (1864).

The mortgage attaches as a lien against the real property and is good against third parties from the time of its recording with the register of deeds. A judgment creditor has constructive notice of the recorded mortgage and is therefore subordinate to the lien of the mortgage. A judgment lien creditor is protected as a purchaser. *Lee v. Bermingham,* 30 Kan. 312, 1 P. 73 (1883). The sources of the rules are:

> Sec. 13. No instrument affecting real estate is of any validity against subsequent purchasers for a valuable consideration, without notice, unless recorded in the office of the register of deeds, of the county in which the land lies, or in such other office as or may be provided by

law. Sec. 13, page 355 of the Compiled Laws of 1862.

K.S.A. 58–2222. *Same; filing imparts notice.* Every such instrument in writing, certified and recorded in the manner hereinbefore prescribed, shall, from the time of filing the same with the register of deeds for record, impart notice to all persons of the contents thereof; and all subsequent purchasers and mortgagees shall be deemed to purchase with notice. G.S. 1868, ch. 22, § 20; Oct. 31; R.S.1923, 67–222.

K.S.A. 58–2223. *Same; unrecorded instrument valid only between parties having actual notice.* No such instrument in writing shall be valid, except between the parties thereto, and such as have actual notice thereof, until the same shall be deposited with the register of deeds. G.S. 1868, ch. 22, § 22; Oct. 31; R.S.1923, 67–223.

The mortgagee has only a lien, not title to the realty, which resides in the mortgagor. From an early time, a Kansas mortgagee's remedy for breach of condition on the note was statutorily limited to judicial foreclosure, i.e., suit to obtain judgment after which there is a sale of the property subject to the mortgagor's redemption rights, if any.

In the foreclosure of a mortgage, a sale of the mortgaged property shall in all cases be ordered; and no real estate within this Territory shall be sold for the payment of any money, in security of which it may have been pledged, except in pursuance of a judgment of a court of competent jurisdiction, ordering such sale. Enacted February 11, 1859, Ch. 26, § 384, Compiled Laws of Kansas of 1862.

Without the consent of mortgagor, the mortgagee has no right to possession of the realty under normal circumstances. Since the mortgagee has no title, an action by him to eject the mortgagor will not lie. *Hurd v. Harvey County,* 40 Kan. 92, 19 P. 325 (1888).

### III

The development of the Kansas rule on the ability of a mortgagee to gain possession of rents before foreclosure sale begins with the first reported Kansas case involving a real estate mortgage, *Clark v. Reyburn,* 1 Kan. 266 (1863).

One Brown and his wife mortgaged land to an individual who assigned the mortgage to Clark. Brown then placed a house on the land. After the mortgage note became due, but before foreclosure, Brown sold the house to a purchaser, who in turn removed the house from the mortgaged premises and delivered it to a second buyer, Reyburn. Clark sued Reyburn, alleging that the house was personal property that he owned. He got judgment below, but on appeal the judgment was reversed. As expressed in the syllabus, the court ruled:

By the common law the mortgagee of land, for the purpose of protecting and enforcing his lien against the mortgagor, has the remedies of an owner, but except as to such remedies, and as to all persons except the mortgagee, the mortgagor in possession is to be regarded as owner of the estate, subject to a mere lien. Our legislature (Comp.L. 355 § 12) has still further restricted the rights of the mortgagee, by providing that, "in absence of stipulations to the contrary, the mortgagor of real estate may retain the right of possession thereof."

The court reasoned:

"If the plaintiff's action could be maintained, a mortgagee may recover from the purchasers all the timber, stone and other property severed from the realty and sold by the mortgagor, though its value may exceed the mortgage debt an hundred fold, and however ample the security may remain; although it is quite clear on principle and authority that the purchaser of property so removed by the mortgagor can not be liable in an action for the waste beyond the actual loss the mortgagee thereby sustains."

While the mortgagee based his claim on the idea that the house severed from the mortgaged land was personal property that belonged to him under the then-current version of the statute, Comp.L. 1862, § 12, p. 355, *supra,* the court refused to view the removed house as personalty and opined in

*dicta* that timber, stone or other property that could be severed from the mortgaged property was not personalty owned by the mortgagee. The opinion gave no significance to the fact that the house was put on the land after the granting of the mortgage. The court refused to treat the house as personal property under the last clause of the 1862 statute which gave the mortgagee legal title to such personal property. The decision highlights the early court's application of real property principles to removables in the mortgage context.

A similar case involving fixtures removed from a grist mill came before the high court in 1878. A receiver appointed in a foreclosure suit brought a replevin action to recover mill fixtures that the mortgagor had sold, severed, and delivered to purchasers. The Supreme Court affirmed the district court's ruling in favor of the defendants, saying in the headnote:

A mortgagor of real estate has the right to the possession of the mortgaged property, and to sever and remove timber, wood, sand, earth, coal, stone, or anything else, therefrom, and to sell the same, unless it unreasonably impairs the mortgage security and when it impairs the mortgage security, the remedy of the mortgagee is not at law, but in equity; not replevin to recover the property severed from the realty; but generally injunction, to restrain the commission of waste upon the realty....

*Vanderslice v. Knapp,* 20 Kan. 647 (1878).

The rule of *Vanderslice* and *Clark* was followed in *Tomlinson v. Thompson,* 27 Kan. 70 (1882), an action by a mortgagee against the purchaser of a house removed from mortgaged property between judgment and sale where the purchaser for full value had knowledge of the mortgage lien but had not acted fraudulently, and it was not shown that he had knowledge of the mortgagor's insolvency.

One wonders whether the house-moving business flourished at the expense of the mortgage industry in these early days because in 1889 the legislature passed the following statute:

The removal of any building, outhouse or shed from any real property upon which there is an unsatisfied mortgage properly recorded, as mentioned in the first section of this act, shall not destroy the lien of such mortgage upon such removed property, and it shall be the duty of the court in any action brought to foreclose any mortgage, where it is shown that the property from which said building, outhouse or shed has been removed is insufficient to satisfy such mortgage, to decree the sale of said building, outhouse or shed, wherever the same may be located, in satisfaction of such mortgage: *Provided,* That the land from which said building, outhouse, or shed was removed shall first be sold. L. 1889, ch. 177, § 2; March 6; R.S.1923, 67–316, K.S.A. 58–2316.

## IV

The early cases of *The American Bridge Company v. Max Heidelbach and Milton Courtright, Trustees,* 94 U.S. 798, 24 L.Ed. 144 (1876), and *Seckler v. Delfs,* 25 Kan. 159 (1881), are instructive on the mortgagee's inability to gain possession of rents and profits from the mortgaged property, as contrasted with his inability to possess removed houses, timber, stone and the like.

*American Bridge* is a United States Supreme Court opinion in 1876 on appeal from the Circuit Court of the United States for the District of Kansas.

Kansas & Missouri Bridge Company gave a mortgage to the indenture trustees of a bond issue, probably as security to finance construction of the bridge, although the opinion does not make this clear. The mortgage covered the bridge as well as:

... the rents, issues and profits of the bridge, as far as the same are not required to pay the necessary expenses of keeping in repair and operating said bridge, which rents, issues and profits are hereby pledged to the payment of said interest as it matures, and to the establishment of a sinking fund for the redemption and payment of the principal of said bonds.

On November 25, 1874, the indenture trustees filed a bill in equity asking that the sinking fund in the hands of Kansas & Missouri Bridge Company be applied to the mortgage debt which was in default.

The American Bridge Company held a $15,435.88 judgment against Kansas & Missouri Bridge Company with execution returned *nulla bona.* On December 11, 1874, American Bridge Company filed a bill in equity claiming a judgment lien on the sinking fund money. There was enough money in the sinking fund to pay American Bridge's claim and leave a surplus for the mortgagee.

The Supreme Court reversed the Circuit Court, which had held for the indenture trustees. The Supreme Court first pointed to *Miller v. Sherry,* 2 Wall. 249, 17 L.Ed. 830 (1864), which addressed the procedure for establishing a lien by equitable levy. Having obtained a judgment at law with execution returned, *nulla bona,* American Bridge obtained an equitable lien upon the debtor's property by filing its bill on December 11, 1874, and obtaining service.

The court cited as controlling the cases of *R.R. Co. v. Cowdrey,* 11 Wall. 459, 20 L.Ed. 199 (1870), and *Gilman v. Telegraph Co.,* 91 U.S. 603, 23 L.Ed. 405 (1875), which held that a judgment creditor with a lien on the property of the mortgagor prevailed over a mortgagee who failed to take possession of the rents and profits of the mortgaged premises by obtaining the appointment of a receiver after default and before the attachment of a creditor's lien. The court said:

> In this case, upon the default which occurred, the mortgagees had the option to take personal possession of the mortgaged premises, or to file a bill, have a receiver appointed, and possession delivered to him. In either case, the income would thereafter have been theirs. Until one or the other was done, the mortgagor, as Lord Mansfield said in *Chinnery v. Blackman,* 3 Doug. 391, was "owner to all the world, and entitled to all the profit made." *The mortgage could have no retrospective effect as to previous income and earnings.* The bill of the

trustees does not affect the rights of the parties. It is an attempt to extend the mortgage to what it cannot be made to reach. Such a proceeding does not create any new right. It can only enforce those which exist already. The bill of the trustees is as ineffectual as if the fund were any other property, real, personal, or mixed, acquired by the mortgagee *aliunde,* and never within the scope of the mortgage. (Emphasis added.)

*Seckler v. Delfs,* 25 Kan. 159 (1881), involved two suits. Its facts are difficult to follow because the opinion identifies numerous parties but no named mortgagor.

The landowner/mortgagor granted a mortgage to Putnam, who assigned it to Bond and others. The real estate mortgage contained a rent assignment clause purporting to entitle the mortgagee to possession of the land and the rents upon default. The mortgagor leased the land to Delfs who took possession. The mortgagor then assigned to Seckler the right to receive rents from the tenant, Delfs.

The rents for the months of *September, October, and November 1875,* came due and Seckler demanded payment from Delfs who refused to pay. This resulted in the first suit by Seckler against Delfs, and others, for the rents. It was brought before the Justice of the Peace. On demurrer after presentation of evidence, the Justice held for Delfs. Seckler appealed to the District Court where he lost again. He then appealed to the Kansas Supreme Court. It is unnecessary here to further expound on the first suit.

When the landowner/mortgagor defaulted on the mortgage, Putnam sued to foreclose. At the time, there was no rent due from Delfs for the months of *December 1875 and January 1876.* Putnam assigned the suit to Bond and others who continued the foreclosure action. *At no time did the foreclosure court enter any order granting Putnam, Bond, or others possession of rents or of the property.*

When the rents for December 1875 and January 1876 came due, Seckler demanded payment from Delfs, but Delfs paid the

rents to Bond, the mortgagee's assignee. Seckler then sued Delfs a second time, this time in district court, joining Bond as a party, and praying for the rents for *September, October, November, and December 1875 and January 1876.*

The foreclosure court then rendered judgment against the mortgagor for the full amount due on the note and mortgage without giving any credit for the rents Delfs had paid to Bond.

Seckler lost to Delfs and Bond in the second rents action in district court and appealed to the Supreme Court.

In the first action by Seckler against Delfs, the Supreme Court upheld the district court ruling in favor of Delfs as *res judicata,* thereby barring Seckler's recovery of the rents for September, October, and November of 1875.

In the second action by Seckler against Delfs, the Supreme Court held for Seckler, allowing him to recover the rents for the months of December 1875 and January 1876 from Bond, the assignee of the mortgagee.

The court stated the question to be: "[D]id the said stipulation in said mortgage, without any foreclosure and without a receiver being appointed, give the mortgagee, or to his assignee any right to take as his own the rents and profits of the mortgaged property?" In negative answer, the court stated at page 164:

1. This mortgage was not a chattel mortgage in any respect; nor was it so treated or considered by any of the parties; but, on the contrary, it was a pure and simple real-estate mortgage.

2. Nor was the mortgage intended to be a sale or conveyance of any of the property therein described. There was no intention that the mortgage should of itself, with or without a violation of any of its terms, transfer the title to any of the mortgaged property, either absolutely or conditionally, or otherwise; but on the contrary, it was intended that the instrument should be a mere mortgage, a security, a pledge, giving to the holder thereof only a lien upon the mortgaged property, to be enforced just as other real-estate mortgage liens are enforced. A literal reading of the foregoing stipulation might seem to make the mortgage mean more that this; but within the light of our own statutes and the decisions of this court, a fair reading of the stipulations cannot make it mean more than we have stated. Comp.Laws 1879, p. 555, § 1; *Id.* p. 654, § 399; *Chick v. Willetts,* 2 Kan. *385; *Waterson v. Devoe,* 18 Kan. 233. In this state a real estate mortgage conveys no estate or title, in whatever form the mortgage may be drawn; it creates only a lien upon the mortgaged property. And such lien can be enforced only by a judgment or order of the district court. A holder of a real-estate mortgage cannot, even after the condition broken, take possession of the mortgaged property, *or of the rents or profits thereof,* except by consent of all the parties, or by an action in the district court; and he cannot realize upon his mortgage except by judgment of such court. And this is true, whatever the form of the mortgage may be. Even if it were in form a deed absolute, still in its nature and character it would be only a mortgage.

*Where the mortgaged property is not a sufficient security for the mortgage debt, the district court may in some cases appoint a receiver to take charge of the mortgaged property, and to receive the rents and profits thereof, but in no case can the holder of the mortgage, without suit, and without the consent of the mortgagor or his assignee, take possession of either the real estate mortgaged, or the rents or profits thereof.* In the present case the rents for the months of December, 1875, and January, 1876, belonged to the plaintiff, and the tenant Delfs ought to have paid them to the plaintiff, and not to Bond, as he did. Indeed, if we could only reach the right and justice of this case, or rather of the two cases which we have been considering, the plaintiff ought to be able to recover the whole amount for which he sued. (Emphasis added.)

*Seckler v. Delfs,* 25 Kan. at 164.

Another early Kansas case showing that a mortgagee holding a rent assignment is

subject to having third parties cut off his ability to gain possession of rents is *Caldwell v. Alsop*, 48 Kan. 571, 29 P. 1150 (1892). In this case, the rents took the form of crops.

Before a receiver was appointed, the mortgagor sold his landlord's one-third share of a matured corn crop to a third party who had notice of default of the mortgage. The court held that the foreclosing mortgagee's right to the crop was cut off by its sale before the appointment of a receiver.

### V

In their briefs, both parties call the Court's attention to *Farmers Union Jobbing Ass'n v. Sullivan*, 137 Kan. 196, 19 P.2d 476 (1933), and discuss it at length. However, neither seems aware of the same case considered on rehearing and reported later in volume 137 of the *Kansas Reports. Farms Union Jobbing Ass'n v. Sullivan*, 137 Kan. 450, 21 P.2d 303 (1933). Hereinafter the main case will be referred to as *"Farmers Union"* and the case upon rehearing will be referred to as *"Farmers Union–Rehearing"*. The holding in *Farmers Union–Rehearing* supports the position that the mortgagee's ability to possess the rents may be cut off. The opinion is short and, so far as it is pertinent, states:

> Our attention has been called on petition for rehearing in the case of *Farmers Union Jobbing Ass'n v. Sullivan,* decided March 11, 1933, and reported in 137 Kan. 196, 19 P.2d 476, to two items of $50 each which, under the facts shown by the record, do not come with the rule laid ˙down in that decision, being two items for rent due and payable by the tenants to the defendant owner on November 1, 1931, which were reached and covered by the service of garnishment summons about that date....

> The mortgage held by the intervener contained an assignment of rents to the mortgagee, but no demand on the tenants had been made by the intervening mortgagee for the possession of the rents until November 23, 1931, and it was held in the decision rendered that the lien of the mortgagee was prior to a lien or claim under garnishment process

from the date of the demand, when immediately followed by consent or by judicial proceeding to obtain possession of the rents thus assigned.

> Under this ruling the lien of the garnishment summons would be prior to that of the intervening mortgagee for all rents thus garnisheed before the date of the demand, November 23, 1931. The plaintiff is therefore entitled to collect these two items of $50 each reached by his garnishment before the demand was made. The decision heretofore rendered is modified to that extent but not further, as the next two items were covered by garnishment after the date of demand.

In partial summary, *Chick, Clark,* and *Vanderslice* are early cases that examine the nature of a Kansas mortgage. These cases show that unlike the common law mortgagor, after condition broken a Kansas mortgagor is the title holder of the mortgaged property entitled to possession and control of the premises and its rents, profits and issue. The Kansas mortgagor is imbued with substantial property rights. These cases further demonstrate that the mortgagee has only a security, a lien on the mortgaged premises. To realize upon this lien, the mortgagee must commence a judicial foreclosure action and cause a sale of the property. If the mortgagee is the high bidder at the sale, he cannot possess the land of a non-consenting mortgagor until the redemption period has run without the mortgagor exercising his redemption rights. Even under the early statute that included a clause giving a mortgagee legal title to and the right to possession of personal property, a house removed from the land by the mortgagor was held to be realty and not personalty. The mortgagor had the power to sell and give good title to a house removed from the mortgaged premises so long as the mortgagee had not enforced its lien by obtaining appointment of a receiver. The courts were unwilling to treat the removed house as different from other products that could be removed from the land such as "timber, wood, sand, earth, coal, or anything else." The mortgagor could sell and remove parts of the

mortgaged land without interference from the mortgagee who failed to get a receiver appointed even though he held a recorded mortgage.[2]

*American Bridge, Farmers Union–Rehearing, Seckler,* and *Caldwell* are more to the point here because they involve real estate mortgages containing assignment of rent clauses and disputes between the mortgagee (or his assignee) and a resisting mortgagor (or his assignee) or a judgment lien creditor.

Another category of Kansas cases, not explored in detail here, are those in which the mortgagor (or his assignee) is not resisting the mortgagee's possession of the property or the rents. As will be seen later, these "consent" cases are relevant to this opinion primarily in that they contain *dicta* on the question of what actions a mortgagee may take *to obtain possession of the rents.* In these cases there must be actual possession obtained after demand by the mortgagee and consent to possession by the mortgagor. See e.g., *Hall v. Goldsworthy,* 136 Kan. 247, 14 P.2d 659 (1932), and *Farmers Union Jobbing Ass'n v. Sullivan,* 137 Kan. 196, 19 P.2d 476 (1933).

■ Viewed as limited to their facts, *American Bridge* and *Farmers Union–Rehearing* hold that a judgment lien creditor can prevail over a mortgagee, or someone claiming through him, who has failed to take possession of the rents through a receiver before the creditor acquires a lien on the rents in the hands of the mortgagor.

*Seckler* and *Caldwell* establish the same proposition for an assignee of the mortgagor who receives rights in the rents before the mortgagee acts to obtain possession of the property or its rents through a receiver. In *Seckler,* the assignee of the mortgagor prevailed over the mortgagee even though there had been a judgment entered in the foreclosure action but no receiver appointed to take the land or the rents.

The reasoning in these rent cases reveals that, as in the early mortgage cases, the courts focus on the requirements that a

real estate mortgage must be foreclosed by judicial action and sale and that a mortgagee who fails to get a receiver appointed will lose to a judgment lien creditor or assignee of the mortgagor. The analysis is based upon concepts of real property law rather than on concepts of contract law. The existence of a rent assignment clause in the mortgage is stated in the opinions as a fact, but they do not treat that fact as operative. The presence of a rent assignment clause in the mortgage lends nothing to the conclusions drawn by the courts. No attempt is made to treat rents from the property as personalty as some courts in other jurisdictions have done. Rather, the problem is analyzed as controlled by the nature of a Kansas real estate mortgage, even though the subject matter of the dispute is the rents from the mortgaged property as distinguished from the property itself.

If a rent assignment clause has no independent significance in these decisions, it would not be surprising to find Kansas cases concluding that a mortgagee can take possession of rents by appointment of a receiver even though there is no such clause in the mortgage. *Schultz v. Stiner,* 97 Kan. 555, 155 P. 1073 (1916), and *Mid–Continent Supply Co. v. Hauser,* 176 Kan. 9, 269 P.2d 453 (1954), are such cases.

In *Schultz,* the plaintiff made a showing that the lien against the property exceeded its value. Under the statute in effect in 1916, this was grounds for appointment of a receiver. The foreclosing plaintiff sued in January and a receiver was appointed in April. Although there was no assignment-of-rents clause in the mortgage, the mortgagee was granted possession of the rents accruing between appointment of the receiver and sale.

In *Mid–Continent,* a first mortgage holder on oil and gas leaseholds applied for appointment of a receiver in a foreclosure action, alleging as required by the old receivership statute that the debt exceeded the value of the mortgaged property. The receiver was appointed and collected oil

---

2. But, see K.S.A. 58–2316, the 1889 statute referred to above that purports to change the law

as the buildings, outhouses, and sheds removed from mortgaged real property.

runs from the property. A sale was held and the proceeds were applied to the first mortgage holder's debt, leaving a deficiency balance. Although there was no rent assignment clause *per se* in the mortgage, the court gave the funds in the hands of the receiver to the first mortgage holder, stating that it had the right to the income from property up to the date of sale. The court thought that the income was pledged as much as the corpus itself and since the first mortgage had priority over the second mortgage, the first mortgage should have the oil runs to the extent of its deficiency claim.

■ Under the Kansas law examined so far, this Court concludes that, whether or not a Kansas mortgage contains an assignment of rents clause, a mortgagee may obtain possession of the rents from the mortgaged property by obtaining the appointment of a receiver before a judgment lien creditor or assignee of the mortgagor acquires rights in the rents in the hands of the mortgagor. At least this is the case where the value of the mortgaged property is less than the debt.

This Court further concludes that, whether or not a mortgage contains a rent assignment clause, the right of a mortgagee to possess the rents from the property can be cut off by a judgment lien creditor or assignee of the mortgagor when the mortgagee fails to take possession of the rents through appointment of a receiver before the creditor or assignee acquires rights in the rents in the hands of the mortgagor.

### VI

*Dicta* in certain Kansas cases suggests that as an alternative to obtaining appointment of a receiver to take possession of rents, a mortgagee can achieve the same result by proceeding through "other legal action." In *Hall v. Goldsworthy*, 136 Kan. 247, 14 P.2d 659 (1932), the court stated the question to be "whether the mortgagee is entitled to the rent from the date of demand, which was made after default, until the date of sale." The court reviewed the mortgage law, stating:

The mortgagee is not entitled to the benefit of the contract until he reduces the rents to his possession or control by proper action in the court. This may be done through a receiver (R.S. 60–1201) or *any other proper action.*

The court then cited 41 C.J. 628, by quotation, part of which said at page 251, 14 P.2d 659:

Unless acted upon by the parties such provisions do not become effective, however, until the mortgagee actually obtains possession, or until he asserts his rights by securing the appointment of a receiver or impounding the rents and profits pending foreclosure, *or taking some action equivalent thereto.*

Again, at page 252, 14 P.2d 659, the court said:

Reason and authority lead us to the conclusion that the mortgagee is not entitled to the benefits of the contract for the rents and profits of the land until he has, by appropriate proceedings through the courts, taken the possession and control of such rents and profits. An appropriate remedy is through a receiver. *It, however, does not necessarily follow that this is the only remedy.* Any *proper procedure* which would empower the court to control rents and profits *would be sufficient to vest the mortgagee with the title thereto*, which must, of course, be applied on the mortgage indebtedness.

Also, *Farmers Union Jobbing Ass'n v. Sullivan*, 137 Kan. 196, 19 P.2d 476 (1933), quotes 41 C.J. at page 200:

Unless acted upon by the parties such provisions do not become effective, however, until the mortgagee actually obtains possession, or until he asserts his rights by securing the appointment of a receiver or impounding the rents and profits pending foreclosure, *or taking some action equivalent thereto.*

And *Missouri Valley Investment Co. v. Curtis*, 12 Kan.App.2d 386, 388, 745 P.2d 683 (1987):

Rents properly collected by a receiver, *or by other legal action*, are to be applied

to the liens on the property in the order of priority.

To address whether "other proper legal action," "action equivalent thereto," or "other legal action" and the like are proper substitutes for the appointment of a receiver, we first need to look at the legal contours of receivership and related Kansas pre-judgment remedies, i.e., attachment, garnishment, replevin, and security interest foreclosure.

## VII

The present rules for obtaining the appointment of a receiver stem from the Kansas Code of Civil Procedure of 1963. The receivership section of the Code appears at K.S.A. 60–1301, *et seq.*

60–1301. Appointment. A justice of the supreme court, a judge of the court of appeals or a district judge, or in the district judge's absence from the county a district magistrate judge, shall have authority to appoint a receiver in conformity with the provisions of K.S.A. 60–1302 and 60–1303, and amendments thereto, whose duty it shall be to keep, preserve, and manage all property and protect any business or business interest entrusted to the receiver pending the determination of any proceeding in which such property or interest may be affected by the final judgment.... (Emphasis added.)

In contrast, under the predecessor statute enacted first in 1858, a receiver would be appointed in the mortgage foreclosure context when:

[I]n an action by a mortgagee for the foreclosure and sale of the mortgaged property, where it appears that the mortgaged property is in danger of being lost, removed or materially injured, *or that the condition of the mortgage has not been performed, and that the property is probably insufficient to discharge the mortgage debt.* Terr.L. 1858, ch. 11, § 253; Terr.L. 1859, ch. 25, § 262; G.S. 1868, ch. 80, § 254; L.1898, ch. 9, § 1, L.1909, ch. 182, § 266; May 29; R.S. 1923, G.S.1935, 60–1201; G.S.1949, 60–1201. (Emphasis added.)

For cases applying this statute see: *Bank v. Dikeman,* 98 Kan. 222, 157 P. 1177 (1916); *Schultz v. Stiner,* 97 Kan. 555, 155 P. 1073 (1916).

Under the old receivership statute, when the plaintiff made an application for appointment ex parte, the court was authorized to obtain a bond from the applicant conditioned on the payment of damages for obtaining the order of appointment wrongfully, maliciously, or without sufficient cause. G.S.1949, 60–1208.

When the Kansas Code of Civil Procedure was revised in 1963, the receivership statute was compressed and the old language stating the grounds for appointing a receiver was not carried over to the new statute. However, based upon the Advisory Committee comments to the new statute, one can argue with some confidence that the same grounds are still available for obtaining receivership under Kansas law.

There would appear to be no advantage in specifying the conditions under which a receiver may be appointed. A receiver should be appointed whenever necessary, and not otherwise.

Advisory Committee Notes, set out in Gard, Kansas Code of Civil Procedure Annotated 2d. § 60–1301, 1990, p. 95.

The comments of Judge Gard further amplify this point.

GS 1949, 60–1201, enumerated six kinds of cases where a receiver might be appointed. The sixth was "in all other cases where receivers have heretofore been appointed by the usages of the courts of equity...."

The enumeration of instances for the appointment of receivers has been eliminated as unnecessary. The former statute probably made no real contribution to the statute law except to point out the situations where a receivership was most commonly indicated.

The appointment of a receiver is exclusively a provisional remedy. It is never the ultimate or end remedy of a lawsuit. The power of a court of equity to appoint a receiver was very broad. The test is

whether the appointment of the receiver is necessary to make the judicial enforcement of the remedy effective. This section abandons the former catch-all classification of cases falling under the usages of the courts of equity and as originally enacted substituted the provision of "whenever such appointment shall be deemed necessary." This removed any restriction which might be implied in reference to courts of equity and made the remedy available in whatever capacity the court is functioning, whether in law or in equity. By amendment even that language was eliminated, leaving the appointment wholly a matter of court discretion, dependent on the necessities of the case.

A receiver may be appointed only upon the production of evidence, even where it is done ex parte. But a verified petition, alleging sufficient facts, as well as any other affidavit, may be use as evidence, under the uses of courts of equity. Or the evidence may be by witness testimony....

Gard, Kansas Code of Civil Procedure Annotated 2d. § 60–1301, 1990.

Is it "necessary" to appoint a receiver to take possession of rents in a mortgage foreclosure action absent a showing that the value of the property is probably less than the debt? Leaving a mortgagor in possession of operating real property without its income to pay for taxes and operating expenses does not seem prudent unless it is required to insure that the mortgagee will be paid his full debt. But, where the property value exceeds the debt, and there are no other circumstances to justify appointment of a receiver, it seems unnecessary to appoint a receiver and thereby deprive the mortgagor of the rents in favor of the mortgagee. All this means that in the context of a mortgage foreclosure, courts should look to the old rule prescribing a preliminary showing of insufficient property value to cover the debt before ordering the appointment of a receiver for the mortgagee.

Like the equitable remedy of injunction (and temporary restraining order), a receiver can be obtained ex parte upon a showing of immediate and irreparable injury.

The present statute provides:

**60–1304. Petition for Appointment; Specifications; Notice; Bond; Not Applicable to Nonresidents.**

A receiver shall not be appointed unless: (a) The petition or application for appointment specifies, to the extent known to the petitioner, or applicant, the general character and probable value of the property, business or business interest for which the appointment is sought, and, if real property is involved, the estimated annual income therefrom; (b) notice and an opportunity to be heard is given to the interested parties, including any person or persons known to be in possession of all or any part of such property, business or business interest, *unless the judge shall, after the introduction of evidence and a record of the proceeding is made, make a finding that immediate and irreparable injury is likely to result, and shall set forth in his order the probable nature of such immediate and irreparable injury.* The judge may also require the petitioner or applicant to execute a bond, on such terms as the judge may direct, which bond shall not be a substitute for or in lieu of the bond of the receiver required in K.S.A. 60–1302, as amended....

The importance of notice under this statute is underscored by the comments of both Judge Gard and one of the drafters of the Code of Civil Procedure, Emmet A. Blaes. Gard's Comments state:

A similar provision was contained in GS 1949, 60–1208. But the new section is a bit more definite in affirming that as a rule *a receiver should not be appointed without reasonable notice and opportunity for hearing.* Notice and opportunity for hearing are dispensed with only where the judge finds that "immediate and irreparable injury is likely to result" if a receiver is not immediately appointed. In the case of such ex parte appointment a bond from the applicant will ordinarily be required, but for good cause

the court need not require it.... (Emphasis added.)

Mr. Blaes reinforces with:

The requirement that notice be given before the ex parte appointment of a receiver is tightened by the prohibition of such appointments unless the judge finds "that immediate and irreparable injury is likely to result...."

Emmet A. Blaes, Some Comments on the New Code of Civil Procedure, 12 K.L.R. 75, 77 (1963).

Finally, in commenting on the severe nature of ex parte receivership the Kansas Supreme Court has said: "The appointment of a receiver, ex parte, and without notice, to take over one's property is one of the most drastic actions known to the law or equity." *Braun v. Pepper*, 224 Kan. 56, 578 P.2d 695 (1978).

In addition to receivership proceedings, Kansas law provides the following extraordinary remedies for obtaining pre-judgement possession of property incident to the filing of an action: attachment (K.S.A. 60–701 *et seq.*), garnishment (K.S.A. 60–714 *et seq.*), replevin (K.S.A. 60–1005 *et seq.*), and security interest foreclosure (K.S.A. 60–1006 *et seq.*). The statutory conditions precedent to allowance of these remedies are similar.

Unlike the receiver appointment procedure, the Kansas attachment statute does not require that "notice and an opportunity to be heard is given to the interested parties, including any person or persons known to be in possession of all or any part of such property, business or business interest...." K.S.A. 60–1304. Likewise, under attachment there is no procedure allowing the judge to dispense with prior notice to the defendant in exigent circumstances by "after the introduction of evidence and a record of the proceeding is made, make a finding that immediate and irreparable injury is likely to result, and set forth in his order the probable nature of such immediate and irreparable injury."

The attachment statute allows a plaintiff to attach a defendant's real or personal property *at* or after the commencement of any civil action when, *inter alia*, defendant

"(8) has failed to pay the price or value of any article or thing delivered which by contract the defendant was bound to pay upon delivery." The statute sets out seven additional grounds for attachment, but they are even less applicable here than the eighth ground quoted above. Generally, the other grounds are: the defendant being a nonresident of the state, absconding or concealing to avoid summons, being about to move out of state, being about to remove property from the state, concealing property to hinder or delay creditors, fraud in contracting the debt, and being liable for injuries arising from a committed felony. See, K.S.A. 60–701.

K.S.A. 60–703 prohibits the issuance of an order of attachment before judgment where the property of the defendant to be attached is in the possession of a third party and is in the form of earnings due and *owing* to the defendant.

In addition to the filing of a petition, the applicant for an order of attachment must file an affidavit stating: (1) one or more of the grounds for attachment listed in the statute, specifying with particularity the facts in support of such grounds; (2) that plaintiff has a just claim against defendant; and (3) the amount the affiant believes the plaintiff ought to recover, after just credits and setoffs. K.S.A. 60–704.

The defendant is entitled to file a post-deprivation motion to dissolve the attachment, which the court must hear within five days after receipt. K.S.A. 60–712.

For private plaintiffs, a bond in double the amount of the claim is required unless the court approves a lesser amount. See K.S.A. 60–702, 60–703, and 60–705.

Finally, the judge may appoint a receiver in aid of attachment, subject to the provisions of Article 13 of Chapter 60, the receivership statutes. K.S.A. 60–711.

The attachment statute has been amended to conform with the suggestions in *Hillhouse v. City of Kansas City*, 221 Kan. 369, 559 P.2d 1148 (1977), a case holding the prior version of the law unconstitutional. The prior statute was held deficient because it did not require the plaintiff to

post a bond; allowed conclusory allegations in the attachment affidavit which failed to state specific facts that might justify pre-hearing attachment; allowed the order of attachment to be issued ministerially by the clerk, rather that by a judicial officer passing on the sufficiency of the facts alleged; and did not provide defendant with an absolute right to an immediate post-seizure hearing.

Garnishment under the Kansas law is either (1) a form of or in aid of attachment, or (2) in lieu of or in aid of execution. K.S.A. 60–714. Accordingly, an order of garnishment may be obtained pre-judgment only pursuant to the same procedure for obtaining an order of attachment. K.S.A. 60–715.

Replevin, under K.S.A. 60–1005, and foreclosure of security interest, under K.S.A. 60–1006, each allow the taking of pre-judgment possession of personal property. Under both statutes, the plaintiff must file an affidavit or verified petition showing statutorily prescribed grounds. Under both procedures, the plaintiff first files an affidavit or verified petition, and then applies to the court for an order of delivery by motion that must be served upon the defendant. However, under both procedures, an order of delivery can be obtained after an ex parte hearing and without notice to and the opportunity for a hearing by the defendant, only if the judge is satisfied as to the probable validity of the allegations in the affidavit or verified petition and that (1) possession of the property by the plaintiff is directly necessary to secure an important governmental or general public interest; and (2) there is a special need for very prompt action due to the immediate danger that the defendant will destroy or conceal the property. Before the order for delivery issues, the plaintiff must file a bond with the clerk in an amount not less than double the estimated value of the property. Both procedures allow for a restraining order without bond in lieu of the ex parte order for delivery.

All of these remedies—receivership, attachment, garnishment, replevin, and security interest foreclosure—require the posting of a bond for the defendant's protection. Usually, it must be in an amount double the value of the property being seized. Certain specific averments are required in each of the procedures to give the court a basis for taking extraordinary action. The court must make findings on the record as a predicate to allowing the plaintiff its prejudgment relief.

The record shows that MBL did not follow any of these well recognized procedural remedies when it asked Judge Chipman for the rents impoundment order.

## VIII

■ Nevertheless, seizing upon the idea of an alternative procedure to appointment of a receiver as a means for obtaining possession of the rents, MBL contends that its pre-bankruptcy action of obtaining an ex parte state court order directing the tenants to pay rent to its agent will allow it to prevail. MBL places heavy reliance on one Kansas case, *Home Owners' Loan Corp. v. Benner*, 150 Kan. 108, 91 P.2d 9 (1939), a case where a mortgagee sought an order to impound rents as contrasted with an order appointing a receiver.

Mr. and Mrs. Benner owned a house and lot in Salina, Kansas. They mortgaged the house to Home Owners' Loan Corporation to secure a $3,345.67 promissory note. The mortgage contained an assignment of rents and authorized the mortgagor, by its agent, to take possession of the premises upon default. The rent was to be applied to costs and the mortgage debt.

On August 14, 1937, after default, Home Owners' Loan Corporation sued Mr. and Mrs. Benner to foreclose the mortgage. The suit was filed in Saline County, Kansas, but summons was issued to the Sheriff of Riley County, Kansas. The Riley County Sheriff made return on the summons on August 30, 1937.

On September 27, 1937, plaintiff applied for an order requiring tenants on the mortgaged property to pay their rentals to the clerk of the court to be applied to the debt. On the following day, the tenants were notified that the application was to be heard on October 1, 1937, and were cau-

**1006**

tioned against paying the accruing rents to the Benners. On October 1, 1937, the district court entered the order applied for, commanding the tenants to pay rents to the clerk of the court until sale or further order of the court.

On April 2, 1938, H.A. Benner made a special appearance by motion to quash the service of summons to Riley County. The court did not rule on the motion, but issued an alias summons to the Sheriff of Shawnee County which he served on April 17, 1938.

On May 17, 1938, Benner, by special appearance, filed a motion to set aside the October 1, 1937, order impounding rents. His grounds were:

1. That the property was his homestead and its rents were exempt to him under the constitution and statutes of the state;

2. That no service had been made upon him at the time the October 1, 1937, impoundment order was made, and;

3. That he had no notice of the time or place of the hearing of the application for an order impounding the rents.

On the court's regular motion day, June 4, 1938, Benner failed to appear in person or by attorney. His May 17, 1938, motion was overruled, and he was given 20 days in which to plead. Benner failed to answer within the 20 days and on June 29, 1938, judgment was entered for the plaintiff. On July 28, 1938, defendants filed a motion to set aside the judgment. The plaintiff confessed to the motion, and defendants were given until December 5, 1938, to answer.

The Supreme Court's opinion states that the defendants' answer, besides pleading various matters the court felt were of no consequence, averred:

1. That the rent provision in the mortgage was without consideration;

2. That the rent provision was in violation of defendants' homestead rights conferred by the state constitution and statutes and deprived defendants of their use and enjoyment of their property and their other privileges

incident thereto up to the date of the sale in foreclosure;

3. That the acts of Congress creating the plaintiff corporation did not authorize it to exact the rents clause as one of the terms on which it would loan funds to distressed owners of homesteads; and

4. Finally, the answer referred to G.S. 1935, 60–1201 to 60–1208, to which the court noted it might refer if necessary in the course of its opinion. However, no further direct reference was made in the opinion.

On December 10, 1938, all issues having been joined, the trial court disposed of the case by entering judgment for the plaintiff for the principal and interest, less the impounded rents held by the clerk, which were paid to the plaintiff. All other pending motions were disposed of, including defendants' request for new trial. Benner appealed the judgment as it related to the assignment of rents.

First, the Supreme Court announced that although the trial court had made no finding that the mortgaged property was the defendants' homestead, it would assume that the property was a homestead for the purpose of the appeal. The court then ruled: "The objection to the trial court's ruling touching the impounded rents, based on the fact that such rents were the income of defendants' homestead, cannot be sustained."

Finally, after citing some contemporary Kansas cases; a sentence from 41 C.J.; some cases from other jurisdictions, including an Iowa case treating rents pledged in a mortgage as a "sort of chattel mortgage;" and some Kansas cases on the right of the mortgagee to rents during the redemption period, the Supreme Court stated at page 112:

Counsel for defendants have a talking point based on the fact that because of something the record does not make clear, good and sufficient service of summons had not been made on defendant when the trial court made its order impounding the rents. But how was he hurt on that account? When alias ser-

vice was effected, he moved to set aside the order, but he had nothing tenable to offer in support of his motion. *Moreover, under the terms of the paragraph in the mortgage assigning the rents to plaintiff upon default of the mortgagor, personal service on defendant was not necessary.* The action could have proceeded to a finality in every respect as a proceeding in rem; and the order ex parte was quite sufficient to impound the rents pending the foreclosure proceedings and until the property was actually sold by the sheriff pursuant to a judgment in foreclosure.

A final objection to the order applying the impounded rents to the satisfaction of the principal indebtedness is based on the fact that the court had no power to make such an order without first finding that the real estate itself was insufficient to pay it. *We think the provision in the mortgage is so worded as to make them a primary security for the satisfaction of defendants' indebtedness.*

This court discerns nothing at variance with our constitution nor with any state or federal statute, nor with any rule of public policy which would vitiate the provision for the assignment of the rents voluntarily executed by defendants, nor in the judgment of the trial court pertaining thereto. The judgment is therefore affirmed. (Emphasis added.)

*Home Owners' Loan Corp. v. Benner,* 150 Kan. at 112, 91 P.2d 9.

The opinion is subject to criticism. Viewed in the abstract, the emphasized portions of the quoted passage seem to grant to the rents clause a much greater power than it was given in any of the prior cases examined. The quoted language seems to give such independent significance to the clause that it makes prior service of process and appointment of a receiver unnecessary to the mortgagee's right to possess the rents. If this were the holding, arguably the court would have elevated the clause to a contractual status higher than that given it by any prior Kansas mortgage case. To the contrary, we have seen that prior cases apply real property principles to the rents just as they do to the property itself, rather than treating the rents as chattel or personal property subject to pledge. Elevating the status of the rent assignment clause is unnecessary to the holding in *Benner* since this 1939 court thought that an impoundment order was a satisfactory substitute for the appointment of a receiver to obtain possession of the rents.[3]

Although in its opinion the court acknowledged the existence of G.S.1935, 60–1201 through 1208, and noted in discussing the averments in defendants' answer that it might refer to the statute if necessary in the course of its opinion, nevertheless, it failed to discuss the statute's relevance to the ruling. Under the statute, the appointment of a receiver in a mortgage foreclosure could be had if "the condition of the mortgage has not been performed, *and that the property is probably insufficient to discharge the mortgage debt.*" Certainly this requirement is relevant to the defendants' argument that the court "had no

---

**3.** A later Kansas Court of Appeals decision seems to make the presence of a rents clause a condition precedent to the mortgagee's right to the rents upon foreclosure even where a receiver has been appointed and has taken possession of the rents. *Missouri Valley Investment Co. v. Curtis,* 12 Kan.App.2d 386, 745 P.2d 683 (1987). At page 388, 745 P.2d 683, the opinion states:

Under Kansas law, a mortgagee is entitled to rents collected after default and before the period of redemption *if* (1) the mortgage conveys or assigns those rents to the mortgagee, and (2) the mortgagee takes possession or control of the rents by proper legal action, such as a receivership proceeding. See *Mid-Continent Supply Co. v. Hauser,* 176 Kan. [9] at 15 [269 P.2d 453 (1954) ]; *Home Owners'*

*Loan Corp. v. Benner,* 150 Kan. 108, 111–12, 91 P.2d 9 (1939); *Hall v. Goldsworthy,* 136 Kan. at 250–51 [14 P.2d 659].

The citation to the *Benner* case suggests that it may be the source of the court's conclusion that a rent assignment clause in the mortgage is a precondition to the mortgagee's right to collect rents even though a receiver is appointed. This idea is not borne out by the holdings and reasoning of the Kansas cases we have examined. Moreover, the extra condition is not necessary to reach the same result in *Curtis* since the owner, Cook, took subject to the mortgage. The Kansas mortgage cases we have examined would support the same result in *Curtis* without making the rents clause an additional condition to possession of the rents.

power to make such an order (for impoundment of rent) without first finding that the real estate itself was insufficient to pay it."

While touched upon in the discussion about service of process in the action, the court disdains the idea that Benner was entitled to prior notice of the order to impound rents. The court in 1939 did not discern anything "at variance with our constitution nor with any state or federal statute, nor with any rule of public policy which would vitiate the provision for the assignment of the rents." Perhaps the impoundment of rents by court order without predeprivation notice and opportunity for hearing was a sufficient substitute for receivership in 1939, but it does not follow that the same result pertains today.

Indeed, the *Benner* court's recitation as set out above is in sharp contrast to the following excerpt from a more modern case:

> Their ultimate right to continued possession was, of course, disputed. If it were shown at a hearing that the appellants had defaulted on their contractual obligations, it might well be that the sellers of the goods would be entitled to repossession. But even assuming that the appellants had fallen behind in their installment payments, and that they had no other valid defenses, that is immaterial here. *The right to be heard does not depend upon an advance showing that one will surely prevail at the hearing. "To one who protests against the taking of his property without due process of law, it is no answer to say that in his particular case due process of law would have led to the same result because he had no adequate defense upon the merits." Coe v. Armour Fertilizer Works,* 237 U.S. 413, 424, 35 S.Ct. 625, 629, 59 L.Ed. 1027. It is enough to invoke the procedural safeguards of the Fourteenth Amendment that a significant property interest is at stake, whatever the ultimate outcome of a hearing on the contractual right to continued possession and use of the goods.

*Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972).

The United States Supreme Court outlines the law of procedural due process for property interest takings in the following cases: *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950); *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969); *Boddie v. Connecticut,* 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971); *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Mitchell v. W.T. Grant Co.,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974); *North Georgia Finishing, Inc. v. Di–Chem, Inc.,* 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975); *Mathews v. Eldridge,* 424 U.S. 319, 47 L.Ed.2d 18, 96 S.Ct. 893 (1976); and *Connecticut v. Doehr,* —— U.S. ——, 115 L.Ed.2d 1, 111 S.Ct. 2105 (1991).

MBL had available to it all of the statutes on the books in Kansas relating to prejudgment deprivation of property interests—receivership, attachment, garnishment, replevin, and foreclosure of a security interest. Rather than use any of these procedures, it chose in effect to write its own statute. In this case, MBL used a statute that in effect stated that incident to a mortgage foreclosure action, a plaintiff may obtain an order from a judge directing the debtors of the defendant to deliver their payments to plaintiff's agent instead of to the defendant. The motion seeking the order need not be verified or accompanied by an affidavit of plaintiff or his attorney stating with specificity the reasons for depriving the defendant of his payments before trial of the mortgage foreclosure action. Prior to the entry of the order and its service upon the defendant's debtors, the defendant need not be given any prior notice of entry of the order or any opportunity to oppose the motion seeking the order. No evidence need be presented to the judge before he issues the order. The judge need not make any record of whether, or what, evidence was presented to him as a basis for his decision to sign the order. The judge need make no recorded findings justifying his granting of the order. No bond need be posted in double the amount of plaintiff's claim for defendant's protection should plaintiff's belief in the merit of

his cause be later held unjustified. No hearing need be afforded the defendant immediately after the taking of his property interest to give him a chance to contest the basis for the issuance of the order.

The U.S. Supreme Court cases cited above clearly show that a statute cast in the form of the hypothetical construct used by MBL in this case cannot stand against the charge that it denies Stanley due process of law under the 14th Amendment to the United States Constitution.

MBL cannot bypass the established rules for obtaining prejudgment possession of Stanley's rents and then successfully contend that its actions are the equivalent of the appointment of a receiver. The actions of MBL are void and of no effect as a substitute for the appointment of a receiver in accordance with the established Kansas procedures for such an ex parte appointment. The actions of MBL in concert with the state court judge's impoundment order are hereby held not to constitute the taking of possession of the rents due from Stanley's tenants on February 1, 1990.

### IX

Having concluded that MBL failed to take "other proper legal action" equivalent to the appointment of a receiver before the filing of the Chapter 11 petition in this case, this Court holds that MBL's motion for cash collateral treatment of its alleged security interest in rents and its motion for perfection of such interest under § 546(b) are resolved in favor of the debtor according to the reasoning of The Honorable James A. Pusateri in *In re Glessner*, 140 B.R. 556 (Bkrtcy.D.Kan.1992) and *In re Wiston XXIV Limited, Partnership*, No. 91–40410–11, 1992 WL 128071 (Bankr. D.Kan., April 22, 1992) (Pusateri, J.), wherein he holds (1) that under § 544 of the Code, the trustee has the status of a purchaser or judgment lien creditor who under Kansas law, as of the date of filing of the bankruptcy petition, is entitled to the rents as against the mortgagee that has not obtained possession thereof with the consent of the mortgagor or through ap-

pointment of a receiver or some other proper legal procedure recognized by the laws of Kansas, and (2) that § 546(b) of the Code does not operate in conjunction with Kansas law to retroactively perfect a mortgagee's security interest in rents. By adopting the core rules of these cases, the Court does not suggest that it either agrees or disagrees with Judge Pusateri's characterizations of the nature of a mortgagee interest, or lack of interest, in rents under Kansas law that some of the statements in his opinions may imply.

For the reasons stated, MBL's motion for adequate protection of cash collateral is overruled. Stanley's motion for turnover of rents is sustained, subject to the following conditions pending confirmation of a plan of reorganization: (1) Stanley will be required to sequester the rents in a separate account; (2) Stanley may use the sequestered rents without prior Court approval only for the payment of ordinary and necessary operating expenses of the business, including the payment of taxes; (3) Stanley must obtain prior Court approval, after notice and hearing, for use of the sequestered rents for any purpose outside the ordinary course of its business, including, but not limited to, capital expenditures.

The foregoing discussion shall constitute findings of fact and conclusions of law under Bankruptcy Rule 7052 and Rule 52(a) of the Federal Rules of Civil Procedure.

IT IS SO ORDERED.